Margaret BRENNAN; Michael Manders; and Ann Dichov, on behalf of the general public and all others similarly situated, Plaintiffs–Appellants,

v.

SOUTHWEST AIRLINES COMPANY; Alaska Airlines, Inc.; and United Air Lines, Inc., Defendants–Appellees.

No. 96–17053.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1997.

Decided Jan. 28, 1998.

Gary J. Near, San Francisco, California; Steven M. Kipperman, Steven M. Kipperman Law Corporation, San Francisco, California, for plaintiffs-appellants.

Robert C. Walters, Russell Yager, Vinson & Elkins, L.L.P., Dallas, Texas; Christopher B. Hockett, McCutchen, Doyle, Brown & Enerson, L.L.P., San Francisco, California, for defendant–appellee Southwest Airlines Co.

Robert A. Goodin, Goodin, MacBride, Squeri, Schlotz & Ritchie, L.L.P., San Francisco, California; Parker C. Folse, III, Susman Godfrey, L.L.P., Seattle, Washington, for defendant-appellee Alaska Airlines, Inc.

Farley J. Neuman, Charles E. Perkins, Jenkins, Goodman & Neuman, San Francisco, California, for defendant-appellee United Air Lines, Inc.

Fred M. Blum, Jaffe, Trutanich, Scatena & Blum, San Francisco, California, for amicus curiae International Airline Passengers Association.

Before: GOODWIN and T.G. NELSON, Circuit Judges, and RHOADES,* District Judge.

RHOADES, District Judge:

## I. Overview

The district court denied Plaintiffs' Motion to Remand to state court and granted Defendants' Motion for Judgment on the Pleadings. Plaintiffs appeal. For the reasons

---

* Honorable John S. Rhoades, Sr., Senior United States District Court Judge for the Southern District of California, sitting by designation.

stated below, we affirm the district court in both respects.

## II. Background

Section 4261 of the Internal Revenue Code ("IRC") required airline passengers to pay a ten percent excise tax on domestic air transportation commenced prior to 1996. The IRC required airlines to collect the tax from their customers and remit the proceeds twice monthly to the Internal Revenue Service ("IRS"). 26 U.S.C. § 4291; 26 C.F.R. 40.6302(c)–1(b)(1)(i). The IRC had imposed this tax since 1941. *See* Revenue Act of 1941, ch. 412, 55 Stat. 687, 721 (1941).

Airlines routinely sold tickets in 1995 for flights in 1996—flights to which the tax did not apply. Many airlines collected the tax on these tickets anyway because they expected Congress to extend the tax into 1996.[1] The airlines expectations were proved wrong, however, when President Clinton vetoed the bill that would have extended the tax.[2] Nevertheless, the airlines continued to collect the tax throughout the remainder of 1995 because they expected Congress to renew it shortly before 1996. Some airlines also collected the tax on tickets sold in early 1996 because they expected Congress to reenact the tax retroactively. However, Congress did not renew the tax until August 1996 and did not make it retroactive. Thus, thousands of airline passengers paid a "tax" that the IRC did not authorize.

The Defendant airlines remitted most of the money to the IRS, although they provided a handful of refunds directly to some passengers. In addition, Defendants may have placed some of the money into escrow accounts. Defendants apparently did not pocket any of the money for their own benefit.

On April 25, 1996 Plaintiffs filed this action in state court against Defendants Southwest Airlines Co., Alaska Airlines, Inc., and United Air Lines, Inc. Plaintiffs sued on behalf of themselves and two classes of persons: individuals who paid the tax in 1995 for air travel that commenced in 1996, and persons who paid the tax in 1996 for travel that commenced before Congress reenacted the tax. Plaintiffs alleged state-law causes of action for unlawful business practices and breach of contract. Plaintiffs also sought declaratory relief and an accounting.

The airlines removed the action to the United States District Court for the Northern District of California. Plaintiffs then filed a Motion to Remand, arguing that the district court lacked subject-matter jurisdiction over their state-law claims. Two days later, the airlines filed a Motion for Judgment on the Pleadings.

On September 6, 1996 the district court denied Plaintiffs' motion to Remand and granted the airlines' Motion for Judgment on the Pleadings. On October 4, 1996 Plaintiffs timely appealed to this Court, which has jurisdiction under 28 U.S.C. § 1291.

## III. Discussion

The first issue is whether the district court properly denied Plaintiffs' Motion to Remand. The second issue is whether the district court correctly granted the airlines' Motion for Judgment on the Pleadings.

### A. Whether The District Court Properly Denied Plaintiffs' Motion To Remand

Plaintiffs argue that the district court improperly denied their Motion to Remand because they pleaded only state-law causes of action. Therefore, Plaintiffs argue, the district court lacked subject-matter jurisdiction.

---

1. "Between 1941 when Congress initially imposed the tax and the end of 1995, the tax had never lapsed. On four occasions, Congress had extended the tax immediately before it was due to expire"—once on the very day. *Eisenman v. Continental Airlines, Inc.*, 974 F.Supp. 425, 431 (D.N.J.1997) (citations omitted); *see also* Pub.L. No. 88–52, § 3(a)(3), 77 Stat. 72 (1963); Pub.L. No. 88–348, § 2(a)(3), 78 Stat. 237 (1964); Pub.L. No. 89–44, § 303(a), 79 Stat. 136, 148 (1965); Pub.L. No. 100–223, § 402(a)(1), 101

Stat. 1486, 1532 (1987); Pub.L. No. 101–508, § 11213(d)(1), 104 Stat. 1388–435 (1990).

2. President Clinton vetoed the bill on December 6, 1995 for reasons unrelated to the excise tax. The bill that he vetoed was a larger budget bill to which the excise tax provision was attached. *See generally* David J. Lynch, *Fliers Can Get Gift of 10%*, USA Today, Jan. 2, 1996, at 1A.

The airlines argue that despite the fact that Plaintiffs pleaded only state-law causes of action *expressly*, Plaintiffs' suit arises under federal law because, in substance, it constitutes a suit for a tax refund. Defendants therefore argue that the district court had subject-matter jurisdiction under 28 U.S.C. § 1331 and the "artful pleading" doctrine.[3]

### 1. Standard of Review

■ We review de novo the denial of Plaintiffs' Motion to Remand. *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir.1987), *cert. denied*, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987).

### 2. Legal Standards Governing Removal

■ In general, district courts have federal-question jurisdiction only if a federal question appears on the *face* of a plaintiff's complaint. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); *Sullivan*, 813 F.2d at 1371. However, the artful pleading doctrine creates an exception to this general rule. Artful pleading exists where a plaintiff articulates an inherently federal claim in state-law terms. "A traditional example of the artful pleading doctrine is one in which the defendant has a federal preemption defense to a state claim and federal law provides a remedy." *Sullivan*, 813 F.2d at 1372.

■ It is well established that the IRC provides the exclusive remedy in tax refund suits and thus preempts state-law claims that seek tax refunds. *See Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1204 (5th Cir. 1997) (stating on similar facts that "[t]he exclusive remedy provided by the Internal Revenue Code ... preempts ... state-law claims against a private entity"), *cert. denied*, —— U.S. ——, 118 S.Ct. 370, 139 L.Ed.2d 268 (1997); *Kent v. Northern Cal.*

*Regional Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1328 (9th Cir.1974) (noting that "the procedures for obtaining judicial review of tax liability were designed to be the exclusive methods for litigating federal tax liability"). Accordingly, we must determine whether Plaintiffs have filed a tax refund suit, as Defendants claim. If they have, then the district court had jurisdiction and properly denied Plaintiffs' Motion to Remand.

### 3. Whether Plaintiffs Have Filed A Tax Refund Suit

Plaintiffs argue that because no statute authorized an excise tax on air travel that commenced in 1996, the ten percent surcharge was not a tax. *A fortiori*, Plaintiffs argue, they have not sued for a tax refund.

This argument has superficial appeal but it nevertheless misses the mark. The question is not whether the airlines collected an internal revenue tax. The question is whether Plaintiffs have filed a tax refund suit within the meaning of the statute that governs tax refund suits. To answer this question, we must look to the text of the statute. *See Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1049 (9th Cir.1997) (noting that "the starting point for interpreting a statute is the language of the statute itself").

### a. The Express Language Of 26 U.S.C. § 7422(a) Establishes That Plaintiffs Have Filed A Tax Refund Suit

■ 26 U.S.C. § 7422(a) describes a tax refund suit as a "suit or proceeding ... in any court for the recovery of any revenue tax alleged to have been erroneously or illegally assessed or collected, ... or of *any sum* alleged to have been ... *in any manner* wrongfully collected...." 26 U.S.C. § 7422(a) (emphasis added).[4]

---

3. Defendants also argue that the district court had jurisdiction under the "complete preemption" and "essential elements" doctrines. They also argue that the district court had jurisdiction under § 1331 because Plaintiffs have argued for an implied cause of action under 26 U.S.C. § 6415(c), although Plaintiffs did not plead one expressly. In addition, Defendants claim that 49 U.S.C. § 41713(b) completely preempts Plaintiffs' state-law claims. We need not address

these arguments because as discussed below, we determine that the district court had jurisdiction under the artful pleading doctrine.

4. Section 7422 reads in pertinent part:
   (a) *No suit prior to filing claim for refund.*—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty

This statute's unambiguous language dooms Plaintiffs' argument. *See Poll,* 124 F.3d at 1049 (stating that clear statutory "language must ordinarily be regarded as conclusive"). Section 7422 contrasts the narrow concept of an "internal revenue tax" with the broad concept of "any sum." *See Flora v. United States,* 362 U.S. 145, 149, 80 S.Ct. 630, 632–33, 4 L.Ed.2d 623 (1960) (noting that one should read the statute in the disjunctive). The statute makes clear, however, that a suit to recover either a "tax" or a "sum" constitutes a suit for a tax refund. *See id.* Thus, the statute means that if someone wrongfully collects money as a tax, then a suit to recover the sum constitutes a tax refund suit, even if the sum did not literally constitute an "internal revenue tax." *Id.* (holding that "the function of the phrase ['any sum'] is to permit suit for recovery of

items which might not be designated as ... 'taxes' ... by Congress or the courts").[5]

Here, the airlines may not have collected an internal revenue tax, but they nevertheless collected a "sum" as a tax.[6] Therefore, Plaintiffs have filed a tax refund suit within the meaning of the IRC.[7]

### b. Policy Considerations Confirm That § 7422 Governs The Instant Case

The correctness of our holding becomes apparent when one considers the consequences of accepting Plaintiffs' argument instead. Accepting Plaintiffs' argument would permit a taxpayer to evade the strictures of § 7422 every time an IRS collection agent collected a tax without authority. This would render § 7422 virtually a dead letter because almost *every* citizen who seeks a tax refund alleges that the tax was collected without authority.[8]

claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary....

. . . .

(f) *Limitation on right of action for refund.* - (1) *General rule.*—A suit of proceeding referred to in subsection (a) may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative....

5. We recognize that this reasoning could lead to absurd results in an extreme case, such as the hypothetical "con man" example posed by the Seventh Circuit. *See Kaucky v. Southwest Airlines Co.,* 109 F.3d 349, 352 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 368, 139 L.Ed.2d 286 (1997). Because we do not encounter such an extreme case today, we need not imply an exception to the clear language of § 7422. *See United States v. Rutherford,* 442 U.S. 544, 552, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979) (stating that "[e]xceptions to clearly delineated statutes will be implied only where essential to prevent 'absurd results' "); *Nesovic v. United States,* 71 F.3d 776, 778 n. 3 (9th Cir.1995) (noting that a court may imply an exception to the plain language of a statute "when a literal interpretation would produce an absurd result").

6. This reasoning applies equally to collections made in both 1995 and 1996.

7. Other courts that have encountered similar cases also have held that the plaintiffs had sued for tax refunds. *See Sigmon,* 110 F.3d at 1203–04; *Kaucky,* 109 F.3d at 351–52; *Eisenman,* 974 F.Supp. at 430–33. These courts primarily based

their holdings on the rationale that the airlines had "colorable authority" to collect the money. These courts reasoned that the airlines had colorable authority because the airlines reasonably had expected Congress to reenact the tax before it expired; the airlines would have faced penalties if Congress had reenacted the tax but the airlines had not collected and remitted the tax money promptly; the airlines would have inconvenienced their passengers if the airlines had tried to collect the taxes after selling the tickets, etc.

We respectfully part company with the courts that have utilized this rationale. The "colorable authority" analysis requires courts to act as historians, trying to ascertain what the airlines knew, what they expected Congress to do, whether those expectations were reasonable, etc. The "colorable authority" analysis also requires courts to balance numerous equities, such as the inconvenience to passengers if the airlines had tried to collect the money after they sold the tickets, whether the airlines could have faced penalties for not remitting the tax money promptly, etc. The "colorable authority" analysis thus calls for difficult line drawing in every case. However, § 7422 already provides a bright line test— § 7422 applies to *any* suit for *any* sum wrongfully collected in *any* manner.

8. Of course, many cases will involve mere misapplications of statutes, rather than a complete absence of statutory authority. Presumably, in order to avoid rendering § 7422 a dead letter, Plaintiffs would argue that the former class of cases would fall within § 7422 while the latter would not. However, we see little difference in this distinction. In both types of cases, legal authority would not exist for the taxes as collect-

■ Plaintiffs' argument thus militates against three distinct purposes of § 7422. First, § 7422 is "designed to confine suits for the refund of federal taxes to suits ... against the government in order to protect its private [collection] agents from being whipsawed." *Kaucky*, 109 F.3d at 353.

> It must be remembered that the defendants did not choose the role of collecting agents. The duty to collect that tax was imposed upon defendants by statute, enforceable, if necessary, by criminal liability for the convenience of the United States.... In so collecting the tax and paying it over to the government the defendants act merely as agents for the United States.
>
> If plaintiffs' theory were accepted, however, the defendants would be placed in the position of having to collect taxes at their peril. Allowing suits such as plaintiffs' might lead to situations in which the collecting agent would be required to refund taxes to the taxpayer but could not recover them from the government.... For example, if the taxpayer is permitted to sue the collecting agent after the statute of limitations for filing refund claims with the government has expired, the collecting agent may not be able to obtain a refund from the government of the amount it is required to pay the taxpayer, since, not being on notice of the taxpayer's claim within the limitations period, it would not have made a timely refund claim.

*DuPont Glore Forgan Inc. v. AT&T Co.*, 428 F.Supp. 1297, 1306 (footnotes omitted), *aff'd*, 578 F.2d 1366 (2d Cir.1978), *and aff'd*, 578 F.2d 1367 (2d Cir.1978), *cert. denied*, 439 U.S. 970, 99 S.Ct. 465, 58 L.Ed.2d 431 (1978); *see also Kaucky*, 109 F.3d at 351 (noting that if a plaintiff prevailed against a collection agent in state court, then the "federal government, not having ... consented to be sued in state courts ... would not be bound by the judgment ... [and] might therefore refuse to credit the [collection agent]—and then the [agent] would be caught in the middle").

ed. *See Kaucky*, 109 F.3d at 351 (noting that every suit for a tax refund is "necessarily based

For these reasons, "[i]t is unlikely that Congress, in requiring the defendants to collect taxes on behalf of the government, intended that they would have to defend lawsuits...." *AT&T*, 428 F.Supp. at 1306. However, accepting Plaintiffs' argument would require the IRS's collection agents to defend lawsuits not only in cases such as the instant case, but routinely—a situation that § 7422 clearly seeks to prevent.

■ Plaintiffs' argument also militates against a second purpose of § 7422: to "afford the Internal Revenue Service an opportunity to investigate tax claims and resolve them without the time and expense of litigation." *Id.* at 1301. Accepting Plaintiffs' argument would allow any taxpayer who alleges that a tax was collected without authority (which would be virtually every aggrieved taxpayer) immediately to sue, contrary to Congress' desire as expressed in § 7422. *See also* Oliver Wendell Holmes, *The Common Law* 96 (1881) (noting that the law generally disfavors engaging the "cumbersome and expensive machinery" of the courts).

■ Plaintiffs' argument also contravenes a third purpose of § 7422: to "protect the Treasury by providing strict limitations periods for tax refund suits." *AT&T*, 428 F.Supp. at 1301. For example, suppose that a citizen pays an unauthorized excise tax, and so decides to sue the collection agent. The citizen tells this to the collection agent who then, in anticipation of having to pay the citizen, files a refund claim with the IRS, shortly before the statute of limitations expires for doing so. Then, *after* the statute of limitations has expired for filing an administrative claim, the citizen finally sues the collection agent, who loses the lawsuit and has to pay.

In this example, the IRS would pay the collection agent because the agent timely filed a claim for a refund, despite the fact that the taxpayer missed the deadline. "In effect [the taxpayer] will have obtained a refund of taxes from the government without ... being subject to the statutes of limita-

on a claim that the taxes were collected in violation of law").

tions imposed by the Code. This would clearly negate the Congressional purpose in enacting the refund provisions of the Code." *Id.* at 1302 (footnote omitted). Accepting Plaintiffs' argument would negate this congressional purpose in many cases that Congress clearly intended § 7422 to cover.

To summarize, accepting Plaintiffs' argument would render § 7422 virtually a dead letter because it would apply to innumerable cases; it has no logical stopping point. We decline to read § 7422—a provision that ensures "the harmony of our carefully structured twentieth century system of tax litigation"—out of the IRC. *Flora,* 362 U.S. at 176, 80 S.Ct. at 647.

■■■ Accordingly, based on the express language of § 7422 and the policy considerations that underlie it, we hold that where a plaintiff sues to recover a sum that was collected as a tax, the plaintiff has sued for a tax refund, even if the sum does not literally constitute an internal revenue tax. *See id.* at 149, 80 S.Ct. at 632–33. Because Plaintiffs in this case have sued for a tax refund, the district court had jurisdiction under the artful pleading doctrine and it properly denied Plaintiffs' Motion to Remand.

### B. Whether The District Court Properly Granted Defendants' Motion For Judgment On The Pleadings

Having determined that the district court had jurisdiction, we next must determine whether the district court properly granted Defendants' Motion for Judgment on the Pleadings.

#### 1. Standard Of Review

■■■ We review de novo a district court's judgment on the pleadings. *McGann v. Ernst & Young,* 102 F.3d 390, 392 (9th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1460, 137 L.Ed.2d 564 (1997).

#### 2. Analysis

■■■ Section 7422 requires aggrieved taxpayers to exhaust their administrative remedies with the IRS before suing for refunds. 26 U.S.C. § 7422(a). The statute further provides that taxpayers may sue only the

United States, and not its collection agents. 26 U.S.C. § 7422(f)(1). Because Plaintiffs failed to exhaust their administrative remedies and sued the wrong party, the district court properly dismissed the case. *See Kaucky,* 109 F.3d at 350 (stating that the plaintiff "had not only not sued the government; he had not filed a claim for [a] refund, which is a precondition to bringing suit").

Plaintiffs have propounded two counterarguments, however, that merit discussion. First, Plaintiffs claim that the Supreme Court's decision in *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) creates an exception to the requirements of § 7422 in this case. Second, Plaintiffs claim that, notwithstanding § 7422, 26 U.S.C. § 6415(c) permits them to sue the airlines. We will address each argument in turn.

#### a. Whether *Enochs* Creates An Exception To The Requirements Of § 7422

■■■ In *Enochs,* the plaintiff asked the district court to enjoin the IRS from collecting allegedly illegal taxes. The plaintiff's request seemed to fly in the face of 26 U.S.C. § 7421(a), which states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.  . . ." 26 U.S.C. § 7421(a).

■■■ The Supreme Court held that, in general, district courts may not enjoin tax collection. Thus, a taxpayer threatened with an illegal tax must pay the tax and then seek recourse through § 7422, i.e., must file a refund claim followed by a federal lawsuit if necessary.

■■■ However, the Court held that "if it is clear that under no circumstances could the Government ultimately prevail . . . the attempted collection may be enjoined. . . . In such a situation, the exaction is merely in the guise of a tax." *Enochs,* 370 U.S. at 7, 82 S.Ct. at 1129 (internal quotation marks omitted). Thus, if the government clearly cannot prevail, then a court can enjoin it from collecting an illegal tax, thereby saving the taxpayer from having to resort to § 7422.

Plaintiffs would extend *Enochs* to the situation where a collection agent *already* has collected an illegal tax. Plaintiffs note that in the instant case the government could not prevail against a refund claim because § 4261 did not tax flights in 1996. Plaintiffs argue that because they unquestionably would win, they need not, under *Enochs*, seek recourse through § 7422.

This argument fails. "The *Enochs* exception ... has never been applied to allow a taxpayer to sue a private tax collector for the refund of erroneously collected taxes," and with good reason. *Sigmon*, 110 F.3d at 1204. Enjoining clearly illegal tax collection allows taxpayers to hold onto their money, thereby saving taxpayers and the government the hassle and expense of refund claims that the taxpayers invariably would win anyway.[9] However, when the government *already* has collected the tax, this rationale does not apply. The taxpayers already have given up the money, and then must attempt to get it back.

Section 7422's very purpose is to require taxpayers to abide by certain guidelines when attempting to get money back from the IRS. In § 7422(a), Congress stated its preference for administrative claims over lawsuits. In § 7422(f)(1), Congress sought to "protect its private ... [collection] agents from being whipsawed" by providing that taxpayers may sue only the United States. *Kaucky*, 109 F.3d at 353. Plaintiffs have not explained why *Enochs* should be extended to overcome these considerations.[10] We therefore hold that *Enochs* does not apply in this circumstance.

### b. Whether Plaintiffs Can Sue The Airlines Under 26 U.S.C. § 6415(c)

Plaintiffs next argue that 26 U.S.C. § 6415(c) creates an exception to the strictures of § 7422, thereby allowing them to sue the airlines directly. Section 6415(c) provides that "[i]n case any person required under section ... 4261 ... to collect any tax shall make an overcollection of such tax, such person shall ... refund such overcollection to the person entitled thereto." 26 U.S.C. § 6415(c).

This statute does not help Plaintiffs. Section 6415(c)'s background establishes that it only applies to overcollections that result from clerical or mechanical errors. Section 6415(c)'s predecessor statute indicated that a taxpayer could get a refund from a collection agent only in limited circumstances: where the collection agent, after refunding the money to the taxpayer, would not have to apply for a separate reimbursement from the IRS, but instead could take a credit on a subsequent tax return. *See* IRC § 1715(d)(2) (1939).[11] Under § 6415(c)'s predecessor statute, a collection agent only could do so if the overcollection resulted from a clerical or mechanical error. *See* Treas.Reg. 42 §§ 130.77, 130.78 (1942); Treas.Reg. 42, art. 51, 52 (1932).

Although § 6415(c) differs somewhat from its predecessor statute, its legislative history indicates that Congress did not intend to change it in a way that impacts this case.

**9.** Of course, one could say the same of an illegal collection where the government has an arguable basis for the collection. However, "[t]he manifest purpose of § 7412(a) is to permit the United States to ... collect taxes ... without judicial intervention." *Enochs*, 370 U.S. at 7, 82 S.Ct. at 1129. The *Enochs* Court apparently believed that courts should interfere only in the most extreme circumstances, i.e., where the government has no basis whatsoever to collect the tax.

**10.** Amicus curiae International Airline Passengers Association argues that because the airlines did not have a colorable basis to collect the money, the airlines do not "deserve" the protection of § 7422. We reject this argument. The airlines found themselves in a difficult position, given the possibility that Congress might have

reenacted the tax and/or made it retroactive. If Congress had done so, and the airlines had not collected and remitted the tax money promptly, the airlines could have faced penalties. *See* 26 U.S.C. § 6656 (providing penalties for untimely remittance). Arguing that the airlines do not "deserve" the protection of § 7422 in this circumstance is flatly wrong.

**11.** Section 1715(d)(2) of the Internal Revenue Code of 1939 stated: "In the case of any overpayment or overcollection of any tax imposed by this chapter, the person making such overpayment or overcollection may take credit therefor against taxes due upon any return, and shall make refund of any excessive amount collected by him...."

*See* H.R.Rep. No. 1337, 83rd Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.C.C.A.N. 4560 (indicating that § 6415 merely clarifies existing law); S.Rep. No. 1662, 83 Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.C.C.A.N. 5231 (indicating that § 6415 merely clarifies existing law and makes changes that are not relevant to the case at bar). Thus, the legislative history and background of § 6415(c) indicate that it applies only to mechanical and clerical errors.

Moreover, the language of § 6415(c), when contrasted with the language of § 7422, indicates that § 6415(c) does not apply to collections that result from errors of law. Section 6415(c) speaks in terms of "overcollections" of taxes. By contrast, § 7422 speaks of "illegal," "erroneous," and "wrongful" collections. " '[O]vercollection of excise taxes ... has historically been distinguished from 'illegal' or 'erroneous' collection under Section 7422." *Sigmon*, 110 F.3d at 1205. The term "overcollection" historically has referred only to collections that resulted from mechanical or clerical errors. *Id.; see also* Treas.Reg. 43, art. 65, 66 (1921) (explaining that the word "overcollection .... [is] confined in general to cases where, as the result of some clerical or mechanical error, an excess amount has been collected"). By contrast, "illegal" collections obviously encompass collections that stem from legal errors.

The distinction between taxes collected as a result of a clerical error and taxes collected as a result of a legal error makes sense as a matter of policy.

The IRS has no interest in taxes collected purely as a result of mechanical or clerical error and hence need not be involved in the refund decision. If excise taxes are collected as the result of a legal error, however, the IRS's interest in being involved in the refund decision is apparent. In the case of a legal error, the private tax collector would also risk being unable to recover the amounts refunded if the IRS determined the amount in fact was owed.

*Sigmon*, 110 F.3d at 1205. Thus, it makes sense to limit § 6415(c) to overcollections that result from clerical errors.

Other courts also have concluded that § 6415(c) applies only to overcollections that result from clerical or mechanical errors.

*See id.* (analyzing § 6415(c) closely and concluding that it only applies to clerical errors); *Kaucky*, 109 F.3d at 353 (holding that § 6415(c) is "limited to errors of computation"); *Lehman v. USAIR Group*, Inc., 930 F.Supp. 912, 915 (S.D.N.Y.1996) (holding that " § 6415(c) at most allows a claim for mathematical and technical errors" and so "cannot be used as an end run around the explicit provisions of § 7422"); *AT&T*, 428 F.Supp. at 1305 (conducting an extensive study of § 6415(c) and concluding that "section 6415(c) is intended merely to simplify the procedures for adjustment of minor clerical errors in tax collection").

We agree with the other courts that have considered the issue. We hold that § 6415(c) applies only to overcollections that result from clerical errors, rather than errors of law, such as occurred in this case. "So this suit cannot be saved by recharacterizing it as a suit to enforce section 6415(c). It is a tax refund suit brought against the wrong party. It was properly removed and properly dismissed." *Kaucky*, 109 F.3d at 353.

## IV. Conclusion

For the reasons stated above, we affirm the district court's denial of Plaintiffs' Motion to Remand and granting of Defendants' Motion for Judgment on the Pleadings.

AFFIRMED.