Paul **MCMASTER, on his own behalf, on behalf of all others similarly situated, and on behalf of the general public, Plaintiffs,**

v.

**COCA–COLA BOTTLING COMPANY OF CALIFORNIA; BCI Coca–Cola Bottling Company; BCI Coca–Cola Bottling Company of Los Angeles; and Does 3 through 25, inclusive, Defendants.**

**No. C 04–4642 MHP.**

United States District Court,
N.D. California.

Feb. 4, 2005.

---

Stephen M. Murphy, Law Offices of Stephen M. Murphy, Elisa P. Laird, Joshua Konecky, Todd M. Schneider, Schneider & Wallace, San Francisco, CA, for Plaintiffs.

Michael Edward Caples, Esq., Michael Stanton Ward, Fitzgerald, Abbott & Beardsley LLP, Oakland, CA, Colette M. Koby, Jennifer B. Robinson, T. Harold Pinkley, Miller & Martin PLLC, Nashville, TN, for Defendants.

### MEMORANDUM & ORDER

PATEL, District Judge.

Plaintiff Paul McMaster, an "account manager" for Coca–Cola, brought this class action in state court against defendants Coca–Cola Bottling Company of California, BCI Coca–Cola Bottling Company, BCI Coca–Cola Bottling Company of Los Angeles, and Does 3 through 25, inclusive, (collectively "defendants") on behalf of himself and all others similarly situated (collectively "plaintiffs"). Plaintiff alleges failure to pay overtime earned for hours worked, failure to pay for all hours worked, waiting time penalties, failure to

provide itemized wage statements, failure to indemnify expenses, and unfair business practices in violation of California Labor Code sections 510, 1194, 201–03, 226, and 2802, as well as violations of California Business and Professions Code section 17200. Defendants timely removed this matter to federal court on the basis of federal question jurisdiction. Now before the court is plaintiff's motion to remand the action to state court. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court now enters the following memorandum and order.

### BACKGROUND [1]

Coca–Cola "account managers," including plaintiff, are responsible for maintaining the accounts and inventory levels of customers such as grocery stores and retail outlets. Each morning, account managers use GPS-tracked phones to receive customer and job information for that day's travel route. Using a Coca–Cola van, they travel from customer to customer, checking stock and fulfilling other duties. The vans are labeled as Coca–Cola vehicles and sometimes carry large advertising displays. Employees perform job duties within the van, and their use is subject to company rules and control at all times. Use of the van to travel to and from home (and thus, presumably, parking the van at home each night) is mandatory. Any personal travel in the van, including the transportation of family members during the first and last trip of the day or at any other time, is prohibited.

Among other allegations of labor violations not relevant to the current motion, plaintiff contests two aspects of defendants' policies surrounding use of Coca–Cola vans. First of all, plaintiff contests defendants' failure to compensate account

managers for the time spent traveling to the first customer each day and home from the last customer each day. Secondly, plaintiff contests the company's new policy of imputing $3 of income per workday for use of the Coca–Cola vans to cover "personal use" of the vehicle. This latter challenge is the subject of the present motion.

In August, 2004, defendants notified account managers of the new "personal use" vehicle policy and the imputation of $3 income per workday for this use. As account managers are expressly prohibited from using the vehicle for personal activities, the "personal use" covered by the $3 attribution must necessarily refer to employees' use of the vehicles for the route between home and their first assignment each morning, as well as the route between the last assignment each day and their home. In his fifth cause of action, plaintiff alleges that the attribution of $3 per day of income to account managers represents a failure to indemnify employees for business expenditures and losses associated with the vehicle. The California Lab.Code section 2802 requires employers to indemnify employees for "all necessary expenditures and losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Labor Code § 2802(a).

On November 2, 2004, within the thirty-day timely filing period after receipt of the complaint, defendants removed this action from state court on the basis that plaintiff's section 2802 claim is in fact an artfully pleaded federal question. Defendants argue that plaintiff's fifth cause of action is actually a suit to recover tax income because defendants misapplied the Internal Revenue Code ("IRC") and implementing regulations. Opp'n at 2. Plaintiff filed the present motion to remand the case to state court for lack of federal jurisdiction. The issue in the present motion is thus whether this court has removal jurisdiction on the basis that plaintiff's section 2802 allegation is in fact a cause of action arising under federal tax law.

## LEGAL STANDARD

### A. Removal

As a general rule, an action is removable to federal court only if it might have been brought there originally. *See* 28 U.S.C. § 1441(a). The removal statute is strictly construed, and the court must reject federal jurisdiction if there is any doubt as to whether removal was proper. *See Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996). The availability of removal is thus limited by the well-pleaded complaint rule, which permits removal only when a federal question is presented on the face of a properly pleaded complaint. *See Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for S. California*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). A defendant bears the burden of proving the propriety of removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). If at any time before final judgment the court determines that it is without subject matter jurisdiction, the action shall be remanded to state court. *See* 28 U.S.C. § 1447(c). If the court remands the action, it may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. *Id.*

### B. Federal Question Jurisdiction

Federal courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386,

392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). An action raising a defense based in federal law does not create federal question jurisdiction "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. 2841. Plaintiff "is the master of . . . her complaint and may avoid federal jurisdiction by exclusive reliance on state law." *Easton v. Crossland Mortgage Corp.,* 114 F.3d 979, 982 (9th Cir.1997). However, "a plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under federal law." *Id.*

## DISCUSSION

### I. Motion to Remand

#### A. Federal Question Jurisdiction

■ Removal jurisdiction on the basis of a federal question turns on a two-stage analysis. As a first step, this court must apply the well-pleaded complaint rule, determining whether the face of plaintiff's complaint "contains any allegations that would render his cause of action one that 'arises' under federal law." *See Lippitt,* 340 F.3d at 1040. Secondly, where plaintiff has not pleaded a federal cause of action on the face of the complaint, this court must evaluate whether plaintiff has artfully pleaded a state law cause of action which necessarily arises under federal law. *Id.* at 1041.

In the context of removal jurisdiction, the well-pleaded complaint rule is the settled principle that "a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. 2841. Federal jurisdiction thus must appear on the face of the plaintiff's properly-pleaded complaint. *See Caterpillar,* 482

U.S. at 392, 107 S.Ct. 2425; *ARCO Environmental Remediation, LLC v. Dep't of Health and Envtl. Quality of the State of Montana,* 213 F.3d 1108, 1113 (9th Cir. 2000) (holding that even where a complaint repeatedly refers to federal law, it does not state a federal question where a plaintiff invokes an independent state law). In the present action, federal jurisdiction does not appear on the face of plaintiff's complaint. Plaintiff alleges five causes of action arising under state law, seeks to certify a statewide class, and nowhere references federal law. The cause of action at issue in the present motion—indemnification for expenses driving to and from the first and last job sites—is pleaded as a matter of Coca–Cola policy which violates state labor protections. Compl. at ¶ 52. Therefore, the well-pleaded complaint rule does not subject plaintiff to federal question jurisdiction.

It is at the second stage of analysis, the artful pleading doctrine, that defendants argue the basis of this court's removal jurisdiction. Opp'n at 2. The artful pleading doctrine prevents a plaintiff from avoiding federal jurisdiction "by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under federal law." *Easton v. Crossland Mortgage Corp.,* 114 F.3d 979, 982 (9th Cir. 1997). This court may recharacterize such "artfully pleaded" state law claims as federal claims. *See Lippitt v. Raymond James Fin. Services Inc.,* 340 F.3d 1033, 1041 (9th Cir.2003). However, the Ninth Circuit has called the doctrine a "minefield" and cautioned that "[c]ourts should invoke the doctrine only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Id.* Two categories of cases may invoke the artful pleading doctrine: (1) complete preemption cases, and (2) substantial federal question

■■■■■■■■■

cases. *Id.* The second category includes claims that are "necessarily federal in character." *Id.* at 1042.

■ Defendants argue that plaintiff's cause of action for indemnification of expenses is in fact a suit for recovery of taxes paid pursuant to the Internal Revenue Code, and thus an artfully pleaded question of federal tax law. Opp'n at 2. The allegations in the complaint state that defendants are "unlawfully passing a business expense" to account managers. Compl. ¶ 22. Plaintiff does not allege that wages are withheld or employees are otherwise charged for their vehicle use, but rather that the new policy "imputes" and "attributes" an additional $3 per workday in tax liability to account managers. *Id.* ¶¶ 24–25, 55. Defendants correctly characterize the financial consequences to plaintiff of this new attribution as an increase in their annual payment of personal income tax. Plaintiff does not specifically allege other expenses incurred by employees in the operation of company vehicles.

Three central issues animate the inquiry into whether plaintiff's fifth cause of action is actually an artfully pleaded federal claim. First of all, defendants argue that the claim is in fact a tax refund suit within the meaning of the IRC and thus a question of exclusive federal jurisdiction. If held not to be a tax refund suit, this court must next inquire whether the claim otherwise raises "substantial federal questions." *Lippitt,* 340 F.3d at 1041. Lastly, if the latter two inquiries indicate there is not federal question jurisdiction over this claim because plaintiff is not contesting his tax liability, defendants argue that his fifth cause of action no longer states a claim for relief.

Thus the first issue to which this court turns is defendants' argument that plaintiff's section 2802 cause of action is in fact an artfully pleaded claim that defendants misapplied IRC section 61, and thus, constitutes a tax refund suit. Opp'n at 3–5. "Tax refund suits," which are indeed soundly within this latter category of substantial federal question cases, are defined by the Internal Revenue Code as attempts to recover a sum of money collected as a tax. *See Brennan v. Southwest Airlines Co.,* 134 F.3d 1405, 1408–09 (9th Cir.1998); 26 U.S.C. § 7422(a). The Internal Revenue Code is the exclusive vehicle for tax refund suits and thus preempts state law suits seeking tax refunds. *Brennan,* 134 F.3d at 1409. Section 61 of the Code defines gross income, and the regulation lists the types of fringe benefits which the IRS deems taxable, including "the value of the commuting use of an employer-provided vehicle." *See* 26 U.S.C. § 61; 26 C.F.R. § 1.61–21(f)(3). The commuting valuation provision of the Internal Revenue Regulations does not independently create a cause of action,[2] however, elsewhere, the tax code does provide a cause of action to recover taxes based on the improper imputation of fringe benefits. *See* 26 U.S.C. § 7422(a).

To the extent that plaintiff is indeed seeking the *recovery* of lost taxes due to the new policy, defendants are correct that the claim is squarely a tax refund suit and a federal question. *See Brennan,* 134 F.3d at 1408–09; 26 U.S.C. § 7422(a). Yet plaintiff asserts that he has not sued for recovery of these increased taxes, but rather is challenging defendants' policy, as applied, and seeking a change in his employer's definition of the first and last trips

---

**2.** Furthermore, even if plaintiff did lack a private right of action in federal court, he would not be entitled to an automatic remand to state court. *See Lippitt,* 340 F.3d at 1046. *But see Utley v. Varian Associates, Inc.,* 811 F.2d 1279, 1283 (9th Cir.1987) (holding that "if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial' federal question.")

of each day from "commuting" to "working." Mot. at 3; Reply at 4. Indeed, plaintiff has asserted—and this court must assume that he will maintain this position throughout the litigation—that he is not seeking the recovery of taxes already paid to the IRS under defendants' current policy. Under the plain language of the IRC definition, plaintiff's cause of action does not constitute a "tax refund suit," because it does not attempt to recover a sum that was collected as a tax. *See Brennan v. Southwest Airlines Co.,* 134 F.3d 1405, 1408–09 (9th Cir.1998); 26 U.S.C. § 7422(a). Plaintiff has not filed this action against the United States nor exhausted administrative remedies with the Internal Revenue Service, both of which would be required for plaintiff to bring suit for recovery of taxes already paid. *Id.* at 1412.

The cases cited by defendants as controlling examples of properly-removed tax refund suits are also distinguishable from the present action because each presented a direct challenge to federal tax laws. *See Lippitt,* 340 F.3d at 1044 (clearly distinguishing cases which "directly challenge a right or liability" under federal law from those which "implicate" a federal law). Unlike the factual scenarios in *Brennan* and *Bright,* relied upon by defendants, the plaintiff in the present action is not protesting the terms of the tax code. *See Brennan,* 134 F.3d at 1409 (challenging the statutory authority for an excise tax on air travel); *Bright,* 780 F.2d at 768 (breach of contract suit to challenge the withholding of income tax by an employer according to federal regulations). The plaintiff in the present action is not disputing the plain terms of IRC regulations that fringe benefits can include commuting in a company vehicle, nor that such commutes may be valued at $3 per day. The present action thus lacks a "substantial" and "disputed" federal question. *See Lippitt,* 340 F.3d at 1042. Indeed, such a challenge to

IRC terms would be prohibited as currently pleaded, as a body of well-settled tax law instructs that an employee cannot bring an action against his employer for following federal law in the payment, withholding, and accounting of taxes. *See Bright,* 780 F.2d at 770; 26 U.S.C. § 3403. As plaintiff is not seeking a refund of taxes, nor challenging a provision of the tax code, this court holds that plaintiff's claim is thus not a tax refund suit within the meaning of 26 U.S.C. section 7422(a).

The second stage of this court's inquiry is to determine whether plaintiff's fifth cause of action is nevertheless "necessarily federal in character" or presents a claim where the "right to relief depends on the resolution of a substantial, disputed federal question." *See Lippitt,* 340 F.3d at 1042. As pleaded, plaintiff's claim asserts a right created by California statutory law for the purpose of "protect[ing] employees from suffering expenses in direct consequence of doing their jobs." *See Grissom v. Vons Companies, Inc.,* 1 Cal.App.4th 52, 1 Cal. Rptr.2d 808, 812 (1991). As a matter of policy, this state-created right should counsel against the assertion of federal jurisdiction. *See Lippitt,* 340 F.3d at 1040 (describing the well-pleaded complaint rule as severely limiting the number of removable cases in which state law creates the cause of action). Section 2802 claims turn on whether an employee's expenses were incurred in the course and scope of employment—an inquiry which is based in state law and normally a question of fact. *See Jacobus v. Krambo Corp.,* 78 Cal. App.4th 1096, 93 Cal.Rptr.2d 425, 429–30 (2000).

Plaintiff argues that litigating and resolving plaintiff's second cause of action— the issue of whether account managers should be compensated for their time during the first and last trips each day—will significantly affect analysis of the fifth

cause of action. Reply at 3. Defendant does not contest that California law governs an employee's wage entitlement for transportation and provides a rule for distinguishing "compulsory travel time" from "an ordinary commute." *See Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 579, n. 2, 94 Cal.Rptr.2d 3, 995 P.2d 139 (Cal.2000) (holding that a mandatory bus ride to and from work was compensable, even though employees could sleep or perform personal activities on the bus). The inquiry into "compulsory travel time" turns on the level of control exerted by an employer over the employee, considering factual questions such as what activities an employee cannot engage in by traveling in company transportation. *See id.* at 586–87, 94 Cal. Rptr.2d 3, 995 P.2d 139 (noting as significant the fact that plaintiffs could not drop off family members, stop for a meal, or run other personal errands). Applied in this case, such an inquiry will pose complicated questions of fact such as: whether account managers' first and last trips are subject to defendants' rules and controls, whether account managers can time and route their first trips according to their personal morning and evening needs, whether the vans are subject to the same GPS tracking system during the first and last trips as during other times, and broadly stated, whether the employees enjoy certain privileges during their first and last trips of the day which they do not enjoy in the balance of their use of the vehicle.

Plaintiff is correct that if the state court determines, pursuant to the second cause of action, that all time spent traveling in the van is compensable under California law, resolution of the fifth cause of action will flow therefrom. *See* Reply at 3. By its terms, commuting under the IRC regulation argued as controlling by defendants refers to time and travel that is non-compensable. *See* 26 C.F.R. § 1.61.21 (stating that the commuting valuation rule only applies where "[f]or bona fide *noncompen-*

*satory* business reasons, the employer requires the employee to commute to and/or from work in the vehicle" (emphasis added)). Whether this time should be compensated is a simple factual question to be resolved, uncontrovertedly using state law, via plaintiff's second cause of action. Once the second cause of action determines whether plaintiff is due compensation for his first and last trips of each day, Coca–Cola's policy will either fall within the plain language of the regulation or it will not.

However, if plaintiff does not prevail on the issue of due compensation for the time worked, resolution of the fifth cause of action will turn on definitions of commuting under the IRC regulations and revenue rulings. In that case, resolution of the fifth cause of action will require a more in-depth inquiry as to whether plaintiff's first and last trips fall within the definitions of commutes under federal law. Yet even in this case, the state court's consultation of the tax code, regulations, and revenue rulings for a definition of commuting is not sufficient to render the claim a federal question. Such definitions are included within the plain language of 26 C.F.R. section 1.61–21(f)(3) and IRS Revenue Ruling 99–7. The standard for invoking federal question jurisdiction on removal is whether the "state claim depends on the resolution of a federal question to such an extent as to trigger subject matter jurisdiction," with the required extent of dependence referred to as "basic," "necessary," "pivotal," and "direct and essential." *See Lippitt,* 340 F.3d at 1045. The utility of the regulation will merely be to defend Coca–Cola's characterization of the trips as commutes and their valuation at $3 of taxable income per day.

State courts routinely consult and apply provisions of the IRC. For instance, in family law cases, the IRC, IRS regula-

tions, and IRS revenue rulings are routinely used as a basis for calculating the value of assets or tax delinquencies, interpreting dissolution of marriage judgments, and other family law matters. *See, e.g., In re Marriage of Hewitson,* 142 Cal.App.3d 874, 882–83, 191 Cal.Rptr. 392 (1983) (determining the market value of closely held shares for tax purposes according to IRC regulations and revenue rulings); *In re Marriage of Hargrave,* 36 Cal.App.4th 1313, 1320–21, 43 Cal.Rptr.2d 474 (1995) (interpreting the meaning and purpose of "innocent spouse" designations by the IRS). Cases brought against the Franchise Tax Board also routinely require consultation with the Internal Revenue Code. *See, e.g., People ex rel. Franchise Tax Bd. v. Superior Court,* 164 Cal.App.3d 526, 556–61, 210 Cal.Rptr. 695 (1985) (interpreting the IRS's position on taxation of investment annuity accounts through revenue rulings and federal case law). The need to consult and interpret federal law in adjudication of a claim founded on a state statutory right does not therefore convert the cause of action to a federal question.

▄▄ Therefore, while this court holds that plaintiff's fifth cause of action for indemnification will require interpretation of "commuting" under the IRC, IRS regulations, and one of the agency's revenue rulings, the claim is not an artfully pleaded state claim which raises a substantial federal question. This holding abides by the general Ninth Circuit policy that the artful pleading doctrine should be raised "only in limited circumstances" because it "often yields unsatisfactory results." *Lippitt,* 340

F.3d at 1041. As plaintiff's fifth cause of action does not raise a substantial question of federal law, plaintiff's case was improperly removed.[3]

## II. Attorneys' Fees

Plaintiff seeks to recover $6,315.00 for fees and costs associated with their challenge of defendants' removal. Federal law permits the recovery of such fees. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal"). The Ninth Circuit has permitted awards of such fees "when a defendant's removal, while 'fairly supportable,' was wrong as a matter of law." *See Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1106 n. 6 (9th Cir.2000). In the present case, though defendants made "fairly supportable" arguments for removal, this court grants attorneys' fees. This disposition represents a change in the court's decision, based on further review of the parties' legal arguments, from the hearing on this motion. The present action is squarely a matter of state court jurisdiction, and the fees sought by plaintiff are just and reasonable.

## CONCLUSION

For the foregoing reasons, the court hereby GRANTS plaintiff's motion for remand to Alameda Superior Court and GRANTS plaintiff's motion for attorney's fees. The Clerk of this Court is instructed to transmit forthwith a certified copy of

---

**3.** Defendants have raised the issue of whether the determination that this case is not a tax refund suit and does not raise a substantial federal question renders plaintiff's fifth cause of action defunct for fatal lack of a remedy. *See* Opp'n at 6. Upon determination that this case was improperly removed, this court does

not have jurisdiction to evaluate whether, absent a claim for tax recovery, plaintiff has stated a cause of action under section 2802. Such an inquiry is properly addressed to the state court upon remand. *See Lippitt,* 340 F.3d at 1043.

this order to the Clerk of the Superior Court for the County of Alameda.

IT IS SO ORDERED.