Hannah **FREDRICKSON,** Ashley Krening, and Maurialee Bracke, Plaintiffs,

v.

**STARBUCKS CORPORATION,** a Washington corporation, Defendant.

No. 3:13–cv–00029–HU.

United States District Court, D. Oregon.

Oct. 29, 2013.

Jon M. Egan, Lake Oswego, OR, for Plaintiffs.

Carol J. Bernick, Derek D. Green, Christopher F. McCracken, Davis Wright Tremaine, LLP, Portland, OR, Daniel L. Nash, Patricia A. Millett, Akin Gump Strauss Hauer & Feld, LLP, Washington, DC, Gregory W. Knopp, Akin Gump Strauss Hauer & Feld, LLP, Los Angeles, CA, for Defendant.

## OPINION AND ORDER

MARSH, District Judge.

Magistrate Judge Hubel filed his Findings and Recommendation on August 28, 2013. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R.Civ.P. 72(b).

When a party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. *See* 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982); *accord Dawson v. Marshall,* 561 F.3d 930, 932 (9th Cir.2009); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (en banc).

Plaintiffs have filed timely objections. Therefore, I have given the file of this case a *de novo* review. I find no error. I write additionally, however, to address some of plaintiff's objections.

## BACKGROUND

A brief summary of the factual and procedural background is necessary. Plaintiffs, former employees of defendant Starbucks Corporation, filed a Class Action Complaint in the Circuit Court for the State of Oregon in Multnomah County on December 10, 2012, primarily alleging that Starbucks violated various state wage and hour statutes by improperly withholding state and federal taxes from tips Starbucks imputed to its employees. Notice of Removal (# 1) exh. 1. Plaintiffs allege that, pursuant to company policy, Starbucks employees distribute tips left in coffee shop tip jars among themselves based on hours worked. *Id.,* exh. 1 at ¶¶ 5–28. Rather than instructing its employees to report the tips the employees received, plaintiff alleged that Starbucks "imputed" or "estimated" that each of its coffee shop employees received $0.50 of tips per hour worked, and improperly withheld state and federal taxes based on that assumption. *Id.*

Based on the above, plaintiffs pled five claims for relief on the basis that Starbucks failed to pay the applicable minimum wage, overtime wages, wages upon termination, and agreed wages, as well as made wrongful deductions from plaintiffs' and the class members' paychecks. *Id.* exh. 1 at ¶¶ 40–54. Each of the claims seek some combination of direct damages, statutory penalty damages, attorney's fees, and interest. *Id.* exh. 1 at ¶¶ 42, 45, 48, 51, 54. Finally, in its Prayer for Relief, plaintiffs additionally requested a declaration that the class members' rights were violated by defendant's actions, and an in-

junction enjoining Starbucks from withholding state or federal taxes based on tips in any employees' future paychecks. *Id.* exh. 1 at 29.

On January 8, 2013, defendant removed the action to federal court, asserting federal question jurisdiction and diversity jurisdiction under the Class Action Fairness Act (CAFA). *Id.* On February 7, 2013, defendant filed a Motion to Dismiss for Failure to State a Claim (# 18). On March 4, 2013, plaintiffs filed a Motion to Remand Case to State Court (# 27). After briefing and oral argument, Judge Hubel recommended that plaintiff's Motion to Remand be denied and defendant's Motion to Dismiss be granted.

### DISCUSSION

Judge Hubel found that' jurisdiction was proper in this court because plaintiff's complaint ultimately raised a substantial federal question. *See* 28 U.S.C. §§ 1331, 1340. I agree. I appreciate, however, the substantial and difficult questions raised by the parties concerning federal question jurisdiction, and accordingly address diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d), and the applicability of the Tax Injunction Act (TIA), 28 U.S.C. § 1341.

### I. Class Action Fairness Act Diversity Jurisdiction

CAFA provides federal courts original jurisdiction over class action lawsuits in which the class contains more than 100 members, any class member is a citizen of a state different from any defendant, and the aggregated amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6); *Standard Fire Ins. Co. v. Knowles,* — U.S. —, 133 S.Ct. 1345, 1348, 185 L.Ed.2d 439 (2013). For purposes of defining the class at this stage of the litigation, " 'class members' include 'persons (named or unnamed) who fall within the definition of the *proposed* or certified class.' " *Knowles,* 133 S.Ct. at 1348 (quoting 28 U.S.C. § 1332(d)(1)(D)) (emphasis in original).

The only element of CAFA jurisdiction disputed by the parties is the amount in controversy requirement. "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT & T Mobility Services, LLC,* 728 F.3d 975, 981 (9th Cir.2013). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Insurance Company,* 372 F.3d 1115, 1117 (9th Cir.2004.). In addition to the complaint, the court considers "facts presented in the removal petition as well as any 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.' " *Id.* (quoting *Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089, 1090 (9th Cir. 2003)).

In its Notice of Removal, defendant alleged that plaintiff's Complaint, while asserting in its title that damages were "not believed to exceed $5,000,000," in fact stated claims that amounted to substantially more than $5,000,000. Notice of Removal at ¶¶ 16–26, exh. 1 at 2. Defendant attached a declaration from Adrienne Gemperle, a "partner resources vice president for the division encompassing Oregon," attesting that during the relevant time period, Starbucks employed 6,028 individuals as baristas and shift supervisors, including 3,335 individuals whose employment terminated during the relevant time period. Declaration of Adrienne Gemperle (# 3) (Gemperle Dec.) at ¶¶ 1, 13–14. Ms. Gemperle additionally averred that the average wages of the 3,335 terminated employees

at the time of separation was $9.77 per hour. *Id.* at ¶ 6.

After plaintiffs noted that Ms. Gemperle's declaration did not specify how many employees received the "imputed tips" and found some modest discrepancies between data summarized in Ms. Gemperle's declaration and data defendant provided to plaintiff in prelitigation discovery, defendant submitted a supplemental declaration from Ms. Gemperle. Declaration of Adrienne Gemperle (#40) (Gemperle Supp. Dec.). In her supplemental declaration, Ms. Gemperle explained the discrepancies and specified that 5,921 coffee shop employees received imputed tips during the relevant time, of which 3,258 separated from Starbucks in the relevant time period. *Id.*

Starbucks argues that the size of the class and the relief requested on each claim, including statutory penalties, establishes that it is more likely than not that the amount in controversy exceeds $5,000,000. Plaintiffs respond that Ms. Gemperle's declarations are inadmissible hearsay and otherwise unreliable, and that Starbucks has accordingly failed to carry its burden to demonstrate that the amount in controversy exceeds the jurisdictional minimum.

I find that the contents of Ms. Gemperle's declarations, are admissible at this point of the proceedings. A record of regularly conducted activity is excepted from the hearsay rule if: 1) "the record was made at or near the time by—or from information transmitted by—someone with knowledge;" 2) the record was kept in the course of a regularly conducted activity of a business; 3) making the record was a regular practice of that activity; 4) the above conditions are shown by the testimony of the custodian or another qualified witness; and 5) "neither the source of information nor the method or circum-stances of preparation indicate a lack of trustworthiness." Fed.R.Evid. 803(6).

Ms. Gemperle stated that "Starbucks maintains the electronic human resources and payroll databases" from which she obtained her information "[i]n the regular course of business," that she is familiar with these databases, and "regularly rel[ies] on the data they maintain in connection with [her] job responsibilities." Gemperle Dec. ¶ 11; Gemperle Supp. Dec. ¶ 2. In addition, Ms. Gemperle stated that she has "personal knowledge of. the employment records maintained regarding Starbucks employees." Gemperle Dec. ¶ 1; Gemperle Supp. Dec. ¶ 1.

While I acknowledge that Ms. Gemperle's declarations could have been tailored to more clearly present the foundational elements of Rule 803(6) on their face, a commonsense reading of the declarations makes clear that the data relied upon by Ms. Gemperle would be admissible. *See Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir.2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). The human resources and payroll databases cited by Ms. Gemperle are textbook examples of records of regularly conducted activity within the hearsay exception of Rule 803(6). I reject plaintiffs' argument that Ms. Gemperle's declarations are unreliable; the apparent discrepancies in the first declaration were adequately explained in the supplemental declaration in such a way as to not undermine the trustworthiness of the data relied upon by Ms. Gemperle. Moreover, as discussed in greater detail below, minor variations in the data would not affect the outcome of the amount in controversy analysis.

■ Considering Ms. Gemperle's declarations, then, I find Starbucks has established by a preponderance of the evidence that the amount in controversy in this matter exceeds $5,000,000. The statutory penalties sought are particularly significant. Plaintiff's Third Claim for Relief, which seeks unpaid wages upon termination, alleges that "Plaintiffs and the Class members are entitled to collect all wages remaining due ... together with attorney fees and costs, as well as pre- and post-judgment Interest, and the 30 days of statutory penalty wages provided by ORS 652.150 and ORS 652.200." Notice of Removal exh. 1 at 27–28. Or.Rev.Stat. § 652.150 provides that the penalty wages for such a violation are payment of the aggrieved employee's wages at the final rate of pay for eight hours per day, up to an additional thirty days or until the terminal wages are paid.

Based on the data provided in Ms. Gemperle's declarations, the potential penalty wages on Claim Three *alone* are approximately $7,639,358.40.[1] Although the court does not currently have sufficient data to make an approximate calculation of plaintiff's other claims for relief, it appears all except Claim Five would also carry significant potential penalty wages. Plaintiffs also alleged entitlement to direct damages, interest, and attorney's fees on each claim. Thus, considering the information provided by Ms. Gemperle and the remedies pled in the complaint, I have no trouble concluding that defendant has carried its burden of establishing by a preponderance of the

evidence that the amount in controversy is greater than $5,000,000. Subject matter jurisdiction is appropriate under CAFA.

## II. Tax Injunction Act

■ Plaintiffs argue that, regardless of jurisdiction under CAFA or the federal question jurisdiction statutes, the TIA deprives this court of subject matter jurisdiction. The TIA mandates that "[t]he district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. In enacting the TIA, Congress expressed "two closely related, state-revenue-protective objectives: (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court ... and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances." *Hibbs v. Winn,* 542 U.S. 88, 104, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004). Thus, the "dispositive question in determining whether the Tax Injunction Act's jurisdictional bar applies is whether plaintiff's action, if successful, would reduce the flow of state tax revenue." *Qwest Corp. v. City of Surprise,* 434 F.3d 1176, 1184 (9th Cir.2006).

■ Plaintiffs' suit, if successful, would not reduce the flow of state tax revenue,

---

**1.** ($9.77 × 8 × 30 × 3,258). Ms. Gemperle stated that the average final rate of pay for the separated employees was approximately $9.77 per hour. Gemperle Dec. at ¶ 14. The final subset of class member employees used in this calculation was slightly different from that for which Ms. Gemperle provided the $9.77 value on account of the reasons provided in her supplemental declaration. *See* Gemperle Supp. Dec., at ¶¶ 10, 11. For this

reason, and because the terminal wage used represents an approximation to two decimal points of the mean wage at separation of the terminated employees, there may be some marginal variation in the product. I note, however, that even if I assume that each relevant employee was terminated at the *lowest* minimum wage applicable during the relevant period, the product would still be $6,568,128 ($8.40 × 8 × 30 × 3,258).

and falls outside both the pain meaning and the purpose of the TIA. Plaintiffs' suit does not assert that their tip income is not subject to taxation, that the state and federal taxes at issue are invalid, or that the taxes do not apply to them. Nor does plaintiffs' suit claim that Starbucks was legally prohibited in general from withholding the appropriate taxes from their tip income and forwarding it to the relevant government.[2] Rather, plaintiff's suit claims that Starbucks improperly withheld the taxes *based on its policy of "imputing" or "estimating" tips,* and seeks to recover the taxes withheld pursuant to that policy along with statutory penalties, interest, and attorney's fees.[3] While this is a tax refund suit insofar as plaintiffs are seeking to recover from Starbucks sums paid as taxes, it does not affect state tax revenue in any way, as plaintiffs admit that the tip income is taxable in some manner. Therefore, the TIA is inapplicable to this case, and does not deprive this court of jurisdiction.

### *CONCLUSION*

With these additional comments, I agree with Judge Hubel's Findings and Recommendation, including his disposition of defendant's Motion to Dismiss. Accordingly, I ADOPT Judge Hubel's Findings and Recommendation (# 46). Plaintiffs' Motion to Remand Case to State Court (# 27)

**2.** Plaintiffs concede, for example, that Starbucks could have withheld taxes on its employees' tips by requiring the employees to report their tip earnings and withholding taxes based thereon.

**3.** Plaintiffs argue that their complaint does not seek the refund of any withheld taxes. To the extent this argument affects the analysis at all, it does not withstand even a cursory review of the complaint. After incorporating by reference all previous paragraphs, each of the five claims for relief pleads that plaintiffs are entitled to direct damages. Of the 39 paragraphs that precede plaintiffs' claims for re-

is DENIED. Defendant's Motion to Dismiss for Failure to State a Claim (# 18) is GRANTED.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATIONS ON MOTION TO DISMISS AND MOTION TO REMAND

HUBEL, United States Magistrate Judge:

The plaintiffs in this case seek to represent a class consisting of "all current and former Oregon employees of Starbucks who reported or were imputed tips." The plaintiffs claim Starbucks engages in an across-the-board procedure whereby it makes payroll tax deductions from employees' paychecks based on "imputed" tips of 50¢ per hour—a practice the plaintiffs claim violates Oregon law.

The plaintiffs filed suit against Starbucks in Multnomah County Circuit Court on December 10, 2012. In their complaint, the plaintiffs assert claims against Starbucks for (1) violation of the Oregon minimum wage law; (2) failure to pay overtime as required by law; (3) failure to pay wages due upon an employee's termination; (4) wrongful payroll deductions in violation of Oregon law; and (5) failure to pay all wages as and when due. Dkt. # 1–1. On January 8, 2013, Starbucks re-

lief, all but 10 are directly related to the policy of imputing tips and the withholding of taxes thereby, with the majority of the remaining paragraphs constituting class and jurisdictional allegations. The direct damages plaintiff seeks, then, necessarily include the wages plaintiffs' argue they were entitled to, but deprived of as a result of the withholdings based on the imputed tips. Post-removal disclaimers of pled remedies are irrelevant in consideration of a motion to remand. *Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers,* 159 F.3d 1209, 1213 (9th Cir.1998).

moved the case to this court, arguing the court has both federal question and diversity jurisdiction over the plaintiffs' claims. *See* Dkt. # 1.

The case now is before the court on two motions: (1) a motion by Starbucks, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the case for failure to state a claim upon which relief can be granted, Dkt. # 18; and (2) a motion by the plaintiffs to remand the case to Multnomah County Circuit Court, Dkt. # 27. The motions are fully briefed, and the court heard oral argument on the motions on April 30, 2013. The undersigned submits the following report and recommended disposition of the motions pursuant to 28 U.S.C. § 636(b)(1)(B).

### FACTUAL BACKGROUND

The pleadings and the parties' briefs include very little in the way of factual background. The parties agree that Starbucks has used some method for estimating the amount of its employees' tips, and Starbucks has withheld state and federal taxes on those estimated tip amounts. The parties disagree as to whether the procedures Starbucks employs are lawful. They also disagree about the very nature of this action. Starbucks argues this is purely an artfully-pleaded tax refund case which is preempted by federal law. The plaintiffs argue they are not seeking refund of amounts wrongfully withheld; "[t]hey are seeking only the state-law statutory damages that result from those illegal, unauthorized deductions." Dkt. # 26, p. 10 [1]; Dkt. # 38, p. 22–23.

In the plaintiffs' motion for remand, they set out a complicated "road map"

which they contend the court must follow in considering the two motions currently before the court. *See* Dkt. # 28, p. 2 *et seq.* However, because of my decision regarding preemption, I take a different route to our destination. Questions raised by the parties' motions include: (1) whether any of the plaintiffs' claims are preempted by federal law; (2) whether any of the plaintiffs' claims should be dismissed, either because they are preempted by federal law which prohibits the claims, or on some other basis; and (3) if any of the plaintiffs' claims survive dismissal, whether the case should remain in this court or be remanded to state court.

### Standards for Motions to Dismiss

Chief Judge Aiken of this court set forth the standard for the court's consideration of a motion to dismiss in *Gambee v. Cornelius,* No. 10–CV–6265–AA, 2011 WL 1311782 (D.Or. Apr. 1, 2011) (Aiken, C.J.). Judge Aiken observed:

Under Fed.R.Civ.P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir.2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir.2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* [556 U.S. 662] 129 S.Ct. 1937, 1949

---

**1.** All page citations in this opinion refer to the pagination applied by the court's electronic filing system, rather than to the page numbers entered by the parties on their briefs, which differ from the ECF pagination due to contents pages and tables of authorities. *See, e.g.,* Dkt. # 26, where the plaintiffs' brief shows "Page 5," but the ECF system shows "Page 10 of 52."

[173 L.Ed.2d 868] (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563[, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929] (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint." *Daniels–Hall,* 629 F.3d at 998.

*Id.* at *2.

### Standards for Removal and Remand

A defendant may remove to federal court any civil action that could have been filed in federal court originally. 28 U.S.C. § 1441(a); *Dennis v. Hart,* 724 F.3d 1249, 1252 (9th Cir.2013). "Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (footnote omitted). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint' rule." *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 840, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989). Under the well-pleaded complaint rule, "federal jurisdiction generally exists 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831, 122 S.Ct. 1889, 1893, 153 L.Ed.2d 13 (2002) (quoting *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429 (emphasis removed)). The well-pleaded complaint rule is "a powerful doctrine [that] severely limits the number of cases in which state law creates the cause of action that may be initiated in or removed to federal district court." *Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033, 1039–40 (9th Cir.2003) (internal quotation marks, citations omitted).

"'When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim.'" *Nevada v. Bank of Am. Corp.,* 672 F.3d 661, 675 (9th Cir.2012) (quoting *Rains v. Criterion Systems, Inc.,* 80 F.3d 339, 346 (9th Cir.1996), in turn citing *Christianson v. Colt Indus. Op. Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). "Even where a state law claim does necessarily turn on a substantial and disputed question of federal law, removal is subject to a 'possible veto' where exercising federal jurisdiction is not 'consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331.'" *Id.* (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg.,* 545 U.S. 308, 313–14, 125 S.Ct. 2363, 2367, 162 L.Ed.2d 257 (2005)).

After a case is removed to federal court, and "at any time before final judgment," the court must remand the case if "it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *Dennis,* 724 F.3d at 1252 (quoting *ARCO Envt'l Remed., LLC v. Dep't of Health & Envt'l Quality of Mont.,* 213 F.3d 1108, 1113 (9th Cir.2000) ("If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case.")). "The removal statute is strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.,* 582 F.3d 1083, 1087 (9th Cir. 2009) (citing *Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 32, 123 S.Ct. 366, 369–70, 154 L.Ed.2d 368 (2002); *California ex rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 838 (9th Cir.2004)).

As the party invoking federal jurisdiction and opposing remand, the burden is on Starbucks to establish that removal is proper. *See id.; Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992); *Wade v. Greyhound Lines, Inc.,* slip op., 2013 WL 705867, at *1 (D.Or. Jan. 2, 2013) (Papak, MJ).

## DISCUSSION

As noted above, Starbucks argues this is actually a tax refund suit in disguise, and as such, the plaintiffs' case is preempted by federal law. The plaintiffs agree that if they were seeking to recover wrongfully withheld taxes, then this would be a tax refund suit. *See* Dkt. # 26, p. 10; Dkt. # 38, p. 22–23. However, they maintain "[t]his is not a tax refund suit" because they are not seeking a refund of the amounts withheld by Starbucks, and in fact, they "have already been refunded those amounts through their regular tax reporting." Dkt. # 26, p. 7. The courts have considered at length the issue of what types of cases are, and are not, tax refund cases, and whether or not different types of claims, although pleaded as state-law claims, actually support federal-question jurisdiction. I will examine, in some detail, several cases cited by the parties which are representative of the their respective arguments, as well as instructive in deciding the present motions.

### McMaster v. Coca–Cola Bottling Co. of California

The plaintiffs rely on *McMaster v. Coca–Cola Bottling Co. of California,* 392 F.Supp.2d 1107 (N.D.Cal.2005), in arguing this is not a tax refund suit, maintaining *McMaster* "precisely mirrors" the present case.

The plaintiff McMaster was employed as an account manager for Coca–Cola. He filed a class action in state court against several related defendants (collectively "Coca–Cola") alleging "failure to pay overtime earned for hours worked, failure to pay for all hours worked, waiting time penalties, failure to provide itemized wage statements, failure to indemnify expenses, and unfair business practices," all allegedly in violation of California law. *See id.,* 392 F.Supp.2d at 1109. Among other things, the plaintiff challenged Coca–Cola's policy relating to account managers' use of Coca–Cola vans. The court described the claim as follows:

Coca–Cola "account managers," including plaintiff, are responsible for maintaining the accounts and inventory levels of customers such as grocery stores and retail outlets. Each morning, account managers use GPS-tracked phones to receive customer and job information for that day's travel route. Using a Coca–Cola van, they travel from customer to customer, checking stock and fulfilling other duties. The vans are labeled as Coca–Cola vehicles and sometimes carry large advertising displays. Employees perform job duties within the van, and their use is subject to company rules and control at all times. Use of the van to travel to and from home (and thus, presumably, parking the van at home each night) is mandatory. Any personal travel in the van, including the transportation of family members during the first and last trip of the day or at any other time, is prohibited.

Among other allegations of labor violations not relevant to the current motion [for remand], plaintiff contests two aspects of defendants' policies surrounding use of Coca–Cola vans. First of all, plaintiff contests defendants' failure to compensate account managers for the time spent traveling to the first customer each day and home from the last customer each day. Secondly, plaintiff contests the company's new policy of

imputing $3 of income per workday for use of the Coca–Cola vans to cover "personal use" of the vehicle. The latter challenge is the subject of the present motion.

In August, 2004, defendants notified account managers of the new "personal use" vehicle policy and the imputation of $3 income per workday for this use. As account managers are expressly prohibited from using the vehicle for personal activities, the "personal use" covered by the $3 attribution must necessarily refer to employees' use of the vehicles for the route between home and their first assignment each morning, as well as the route between the last assignment each day and their home. In his fifth cause of action, plaintiff alleges that the attribution of $3 per day of income to account managers represents a failure to indemnify employees for business expenditures and losses associated with the vehicle. The California [Labor] Code section 2802 requires employers to indemnify employees for "all necessary expenditures and losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Labor Code § 2802(a).

*Id.,* 392 F.Supp.2d at 1109–10.

Coca–Cola removed the case to federal court on the basis of federal question jurisdiction, arguing the plaintiffs' claim under California Labor Code § 2802 actually was "an artfully pleaded federal question." *Id.,* 392 F.Supp.2d at 1110. Specifically, Coca–Cola argued the "plaintiff's fifth cause of action [was] actually a suit to recover tax income because defendants misapplied the Internal Revenue Code ... and implementing regulations." *Id.*

The plaintiff filed a motion to remand the case to state court for lack of federal jurisdiction. To resolve the issue, the court applied a two-part test articulated by the Ninth Circuit in *Lippitt.* The *Lippitt* court explained that the first step in determining whether the court has federal question jurisdiction is application of the well-pleaded complaint rule (discussed above in the "Standards" portion of this opinion). Under the well-pleaded complaint rule, the court's first task is to determine whether the plaintiff's complaint, on its face, "contains any allegations that would render his cause of action one that 'arises' under federal law." *Lippitt,* 340 F.3d at 1039–40; *see Dennis,* 724 F.3d at 1252.

If no claim arising under federal law appears on the face of the plaintiff's complaint, then the court looks to see if the plaintiff "has artfully pleaded a state law cause of action which necessarily arises under federal law." *McMaster,* 392 F.Supp.2d at 1111 (citing *Lippitt,* 340 F.3d at 1041). In other words, a plaintiff may not avoid federal jurisdiction " 'by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under federal law.' " *Id.* (quoting *Easton v. Crossland Mortg. Corp.,* 114 F.3d 979, 982 (9th Cir.1997)). This "artful pleading doctrine" allows the court to "recharacterize such 'artfully pleaded' state law claims as federal claims." *Id.* (citing *Lippitt,* 340 F.3d at 1041). The *McMaster* court observed that "[t]wo categories of cases may invoke the artful pleading doctrine: (1) complete preemption cases, and (2) substantial federal question cases[,] ... [which] includes claims that are 'necessarily federal in character.' " *McMaster,* 392 F.Supp.2d at 1111–12 (quoting *Lippitt,* 340 F.3d at 1042).

McMaster's complaint did not include any claim under federal law on its face. Therefore, the defendants argued removal jurisdiction was proper under the artful pleading doctrine. The court found the defendants had correctly characterized the

plaintiffs' financial consequences from the attribution of $3 per workday "as an increase in their annual payment of personal income tax." *McMaster*, 392 F.Supp.2d at 1112. The defendants asserted three arguments that the plaintiff's claim presented a federal question:

First of all, defendants argue that the claim is in fact a tax refund suit within the meaning of the [Internal Revenue Code] and thus a question of exclusive federal jurisdiction. If held not to be a tax refund suit, this court must next inquire whether the claim otherwise raises "substantial federal questions." *Lippitt*, 340 F.3d at 1041. Lastly, if the latter two inquiries indicate there is not federal question jurisdiction over this claim because plaintiff is not contesting his tax liability, defendants argue that his fifth cause of action no longer states a claim for relief.

*Id.*

Coca–Cola argued the plaintiff's section 2802 claim was actually "an artfully pleaded claim that defendants misapplied IRC section 61, and thus, constitutes a tax refund suit." *Id.* The court noted the Internal Revenue Code defines "tax refund suits" as "attempts to recover a sum of money collected as a tax .... [and] [t]he Internal Revenue Code is the exclusive vehicle for tax refund suits and thus preempts state law suits seeking tax refunds." *Id.* (citing *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1408–09 (9th Cir.1998); 26 U.S.C. § 7422(a)).

The *McMaster* court then considered whether the plaintiff in the case was, in fact, seeking a refund of lost taxes:

To the extent that plaintiff is indeed seeking the *recovery* of lost taxes due to the new policy, defendants are correct that the claim is squarely a tax refund suit and a federal question. *See Brennan [v. Southwest Airlines Co.]*, 134

F.3d [1405,] 1408–09 [ (9th Cir.1998) ]; 26 U.S.C. § 7422(a). Yet plaintiff asserts that he has not sued for recovery of these increased taxes, but rather is challenging defendants' policy, as applied, and seeking a change in his employer's definition of the first and last trips of each day from "commuting" to "working." [Citations to briefs omitted.] Indeed, plaintiff has asserted—and this court must assume that he will maintain this position throughout the litigation— that he is not seeking the recovery of taxes already paid to the IRS under defendants' current policy. Under the plain language of the IRC definition, plaintiff's cause of action does not constitute a "tax refund suit," because it does not attempt to recover a sum that was collected as a tax.... Plaintiff has not filed this action against the United States nor exhausted administrative remedies with the Internal Revenue Service, both of which would be required for plaintiff to bring suit for recovery of taxes already paid. [*Brennan*, 134 F.3d] at 1412.

The cases cited by defendants as controlling examples of properly-removed tax refund suits are also distinguishable from the present action because each presented a direct challenge to federal tax laws. *See Lippitt*, 340 F.3d at 1044 (clearly distinguishing cases which "*directly challenge a right or liability*" *under federal law from those which* "*implicate*" *a federal law* ). Unlike the factual scenarios in *Brennan* and *Bright* [*v. Bechtel Petroleum, Inc.*, 780 F.2d 766 (9th Cir.1986) ], relied upon by defendants, the plaintiff in the present action is not protesting the terms of the tax code. *See Brennan*, 134 F.3d at 1409 (challenging the statutory authority for an excise tax on air travel); *Bright*, 780 F.2d at 768 (*breach of contract suit to*

*challenge the withholding of income tax by an employer according to federal regulations* ). The plaintiff in the present action is not disputing the plain terms of IRC regulations that fringe benefits can include commuting in a company vehicle, nor that such commutes may be valued at $3 per day. The present action thus lacks a "substantial" and "disputed" federal question. *See Lippitt,* 340 F.3d at 1042. *Indeed, such a challenge to IRC terms would be prohibited as currently pleaded, as a body of well-settled tax law instructs that an employee cannot bring an action against his employer for following federal law in the payment, withholding, and accounting of taxes. See Bright,* 780 F.2d at 770; 26 U.S.C. § 3403. As plaintiff is not seeking a refund of taxes, nor challenging a provision of the tax code, this court holds that plaintiff's claim is thus not a tax refund suit within the meaning of 26 U.S.C. section 7422(a).

*McMaster,* 392 F.Supp.2d at 1112–13 (emphasis added).

 Starbucks argues the plaintiff in *McMaster* made no allegation that taxes were withheld wrongfully from his paycheck, whereas in the present case, the plaintiffs specifically make such an allegation. Starbucks further argues the plaintiffs here are seeking refunds of wrongfully-withheld taxes, "or at least statutory damages, attorneys' fees, and sanctions for Starbucks['s] withholding." Dkt. # 29, p. 14. In essence, Starbucks argues the plaintiffs seek to punish it under state law for following federal law in the withholding of taxes on estimated tips. In addition, Starbucks notes that in McMaster's complaint, he made no references to federal law, whereas the plaintiffs here make "dozens of references to federal tax law and regulations." *Id.* Starbucks asserts the plaintiffs' claims "predicate liability on the very withholding that Starbucks undertakes not for its own purposes, but as 'agents for the United States.'" *Id.,* p. 16 (quoting *Brennan,* 134 F.3d at 1411). Thus, Starbucks maintains the plaintiffs' claims are barred by federal statutory and case law.

The plaintiffs argue Starbucks has misinterpreted their complaint. They again assert they are not seeking a refund of the withheld amounts, but rather they are seeking a statutory penalty provided by Oregon law. Specifically, ORS § 652.610 prohibits an employer from withholding, deducting, or diverting any portion of an employee's wages unless "[t]he employer is required to do so by law," or one of five other circumstances not related to this case exists. ORS § 652.610(3)(a); *see* Dkt. # 1, Notice of Removal, ¶ 22. If an employer violates ORS 652.610, the aggrieved employee may file "a private cause of action ... for actual damages or $200, whichever is greater." ORS § 652.615. The plaintiffs here assert they are seeking only the statutory penalty, not the actual sums withheld by Starbucks. Dkt. # 38, p. 23.

Starbucks's reliance on the plaintiffs' numerous citations to federal laws and regulations is misplaced. In their complaint, the plaintiffs discuss state and federal tax laws upon which they base their claim that Starbucks's policies violate Oregon law. The plaintiffs are not challenging the validity of any federal or state tax law or regulation. Instead, they claim that by failing to follow the applicable federal and state tax laws, Starbucks violated several provisions of *Oregon* law, specifically: ORS § 653.025, which requires payment of a minimum wage; ORS § 653.261, which requires payment of time-and-a-half for overtime; ORS § 652.140, which requires timely payment of wages due upon an employee's termination; ORS § 652.610, which prohibits unauthorized deductions

from employees' paychecks; and ORS § 652.120, which requires payment of all wages as and when due. The plaintiffs seek a declaratory judgment that Starbucks's policies violate Oregon law; an injunction prohibiting Starbucks from continuing those policies; recovery of any wages that were not paid as and when due; statutory damages; pre- and post-judgment interest; and their attorney fees and costs. Nowhere in the plaintiffs' complaint do they pray for refund of amounts wrongfully withheld by Starbucks, and the plaintiffs have reasserted in their briefs that they do not seek refund of any amounts withheld. Like the court in *McMaster*, the court must assume the plaintiffs will continue to maintain this position throughout the litigation. Thus, at first blush, it would appear the *McMaster* analysis would support a finding that this is not a tax refund suit. *See McMaster*, 392 F.Supp.2d at 1113.

However, as Starbucks notes, the plaintiffs here expressly state that they "base this class action on Starbucks's wrongful deduction of three categories of taxes from its employees' wages based on imputed and other tip amounts." Dkt. # 1–1, ¶ 4. As the *McMaster* court observed, "a body of well-settled tax law instructs that an employee cannot bring an action against his employer for following federal law in the payment, *withholding, and accounting of taxes.*" *McMaster*, 392 F.Supp.2d at 1113 (emphasis added). Thus, this case, as pleaded, is distinguishable from *McMaster*. Even though the plaintiffs are not challenging the validity of a federal or state tax law, they are challenging Starbucks's actions in withholding taxes from their wages in a manner specifically authorized by federal regulations. As such, the plaintiffs may not bring this case against Starbucks for following federal law.

### Bright v. Bechtel Petroleum, Inc.

The plaintiff in *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766 (9th Cir.1986), had entered into an employment contract with the defendant Bechtel Petroleum, pursuant to a collective bargaining agreement. Bright filled out a W–4 withholding allowance form claiming an exemption from federal income tax, and Bechtel forwarded Bright's W–4 form to the IRS. A few months later, Bechtel received notice from the IRS that Bright's W–4 form was invalid. The IRS ordered Bechtel to begin withholding federal income taxes from Bright's wages. Bechtel also began withholding California state income tax, in accordance with a state income tax regulation. Bright sued Bechtel and others in state court, alleging Bechtel had breached his employment contract by " 'issuing to plaintiff paychecks that were in amounts less than contracted and agreed for.' The complaint allege[d] a cause of action based upon 'breach of contract and a gross violation of Christian principles.' " *Bright*, 780 F.2d at 768–69.

Bechtel removed the case to federal court, claiming Bright's case actually was "challenging federal income tax withholding laws and regulations." *Id.*, 780 F.2d at 769. In two pre-lawsuit letters to Bechtel, Bright "criticized the IRS directive as illegal and cited federal internal revenue statutes." *Id.* After removal, in an attempt to skirt federal jurisdiction, Bright claimed he actually only intended to litigate his claim involving withholding of state income tax. The district court found this assertion to be disingenuous, and held removal was proper. *Id.*, 780 F.2d at 770.

The district court granted Bechtel's motion to dismiss, finding Bechtel had acted "fully in accordance with federal internal revenue regulations" in withholding federal income tax from Bright's wages. *Id.* The Ninth Circuit affirmed, noting it has

held repeatedly "that an employer is not liable to an employee for complying with its legal duty to withhold tax." *Id.* (citing 26 U.S.C. § 3403; 26 C.F.R. § 31.3402(f)(2)–1(g)(5)(v)). The court held "suits by employees against employers for tax withheld are 'statutorily barred'" by 26 U.S.C. § 3403, which provides that employers are not "liable to any person" for paying withheld taxes to the IRS. *Id.* (quoting *Chandler v. Perini Power Constructors, Inc.,* 520 F.Supp. 1152, 1156 (D.N.H.1981)).

The appellate court further held Bright's action was "barred by the Anti–Injunction Act, 26 U.S.C. § 7421(a), which prohibits suits 'for the purpose of restraining the assessment or collection of any tax.'" *Id.* (quoting *Maxfield v. United States Postal Serv.,* 752 F.2d 433, 434 (9th Cir.1984)). The court found Bright's claim could "be viewed as one to restrain collection (through withholding) of federal income tax." *Id.* (citations omitted).

The *Bright* court also found the district court had properly dismissed Bright's state tax withholding claim, noting the "claims involving withholding of state tax and federal tax arose out of a 'common nucleus of operative fact.'" *Id.,* 780 F.2d at 771 (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The court found Bechtel had acted in ac-

cordance with California law and regulations in withholding state taxes, and the district court properly considered Bright's state tax claim under the court's pendent jurisdiction. *Id.* (citing *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1430 (9th Cir.1984)). The court noted Bechtel's withholding of both federal and state taxes "was based upon the single IRS directive," and Bechtel could not be held liable for rightfully relying upon the IRS directive and California regulations. *Id.*

*Bright* supports the conclusion that this is a tax refund suit. The plaintiffs are challenging Starbucks's actions in withholding tax from their wages based on estimated tips. Such a challenge is exactly the type of suit that is barred by 26 U.S.C. § 3403.[2] *Bright,* 780 F.2d at 770.[3] As in *Bright,* the plaintiffs' "[state law] claims involving withholding of ... federal tax arose out of a 'common nucleus of operative fact.'" *Bright,* 780 F.2d at 771 (citation omitted).

### *Brennan v. Southwest Airlines Co.*

The plaintiffs in *Brennan v. Southwest Airlines Co.,* 134 F.3d 1405 (9th Cir.1998), sued three airline companies to recover unauthorized excise taxes the airlines collected on tickets for air travel. From 1941 to the end of 1995, the Internal Revenue Code (the "Code") required airline passengers to pay a 10% excise tax on domestic

---

**2.** "The employer shall be liable for the payment of the tax to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment." 26 U.S.C. § 3403.

**3.** Without further elaboration, the court also notes the *Bright* analysis regarding the Anti–Injunction Act is applicable here. *See Bright,* 780 F.2d at 770 (Anti–Injunction Act barred Bright's suit seeking to restrain the collection of federal income tax); *see also Schagunn v. Gilland,* slip op., 2013 WL 1914399, at \*\*–3–4 (D.Or. May 7, 2013) (Hernandez, J) (same).

The plaintiffs in the present case argue at some length that their claims fall under a judicially-created exception to the Anti–Injunction Act. *See* Dkt. # 26, pp. 14–19 (citing *Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962); *Comm'r v. Shapiro,* 424 U.S. 614, 627, 96 S.Ct. 1062, 1070–71, 47 L.Ed.2d 278 (1976); *Sokolow v. United States,* 169 F.3d 663, 665 (9th Cir.1999)). Because the court finds the plaintiffs' action is barred on other grounds, the court will avoid the minefield of exceptions to the Anti–Injunction Act.

air travel. Airlines were required to collect the tax from their customers, and remit the taxes to the IRS twice a month. The tax had never lapsed from the time of its enactment to the end of 1995. "'On four occasions, Congress had extended the tax immediately before it was due to expire'—once on the very day." *Brennan,* 134 F.3d at 1408 & n. 1 (quoting *Eisenman v. Continental Airlines, Inc.,* 974 F.Supp. 425, 431 (D.N.J.1997) (citations omitted)).

The tax was due to expire at the end of 1995, but the airlines expected that Congress would extend the tax again into 1996. Therefore, the airlines collected the tax on tickets sold in 1995 for 1996 travel. However, on December 6, 1995, President Clinton vetoed the budget bill to which the excise tax provision was attached. Nevertheless, some airline companies continued to collect the tax on tickets sold throughout the remainder of 1995, and on into early 1996, expecting that Congress would reinstate the tax retroactively. *Id.* Congress renewed the tax in August 1996, but did not make it retroactive. "Thus, thousands of airline passengers paid a 'tax' that the [Code] did not authorize." *Id.*

The plaintiffs brought a class action against Southwest Airlines, Alaska Airlines, and United Airlines, alleging "state-law causes of action for unlawful business practices and breach of contract," and seeking "declaratory relief and an accounting." *Id.* The airlines removed the case to federal court and filed a motion for judgment on the pleadings, while the plaintiffs moved for remand, arguing the federal court lacked jurisdiction over their state-law-based claims. The district court granted the airlines' motion for judgment on the pleadings, and denied the plaintiffs' motion for remand. The plaintiffs appealed. *Id.*

In their opposition to the plaintiffs' motion to remand, the defendants argued the plaintiffs had filed a tax refund suit, artfully pleading their federal tax claim as a state-law claim. The plaintiffs responded that because the ten percent surcharge collected by the airlines during the applicable time period was not authorized by law, it was not a tax at all, and therefore, the plaintiffs had not sued for a tax refund. The court held, "This argument has superficial appeal but it nevertheless misses the mark. The question is not whether the airlines collected an internal revenue tax. The question is whether Plaintiffs have filed a tax refund suit within the meaning of the statute that governs tax refund suits." *Brennan,* 134 F.3d at 1409.

The court concentrated on the language of 26 U.S.C. § 7422(a), which "describes a tax refund suit as a 'suit or proceeding . . . in any court for the recovery of any revenue tax alleged to have been erroneously or illegally assessed or collected, . . . or of *any sum* alleged to have been . . . *in any manner* wrongfully collected.'" *Id.* (quoting 26 U.S.C. § 7422(a), adding emphasis). The court held the "statute's unambiguous language doom[ed] Plaintiffs' argument." *Id.* Even if the unauthorized surcharge was not a "tax" at the time it was collected, the court found it was a "sum" the plaintiffs alleged was "wrongfully collected" as a tax, and therefore, the suit was one for a tax refund. "Thus, the statute means that if someone wrongfully collects money as a tax, then a suit to recover the sum constitutes a tax refund suit, even if the sum did not literally constitute an 'internal revenue tax.'" *Id.* (quoting *Flora v. United States,* 362 U.S. 145, 149, 80 S.Ct. 630, 632–33, 4 L.Ed.2d 623 (1960)); *see also id.* at n. 4 (quoting 26 U.S.C. § 7422(f)(1), which provides that a tax refund suit generally can be brought only against the United States). The court concluded that although "the airlines may not

have collected an internal revenue tax, … they nevertheless collected a 'sum' as a tax. Therefore, Plaintiffs have filed a tax refund suit within the meaning of the [Code]." *Id.*, 134 F.3d at 1410 (footnote omitted).

The court explained that this holding supports "three distinct purposes of § 7422." *Id.*, 134 F.3d at 1411. First, in confining suits for tax refunds to suits against the government, section 7422 is designed to protect private tax collection agents, such as employers, " 'from being whipsawed.' " *Id.* (quoting *Kaucky v. Southwest Airlines Co.*, 109 F.3d 349, 353 (7th Cir.1997)). The *Brennan* court observed that the airlines' duty to collect taxes was imposed upon them by statute for the convenience of the Government, and the airlines therefore were acting as agents for the United States. "Accepting Plaintiffs' argument would permit a taxpayer to evade the strictures of § 7422 every time an IRS collection agent collected a tax without authority. This would render § 7422 virtually a dead letter because almost *every* citizen who seeks a tax refund alleges that the tax was collected without authority." *Id.*, 134 F.3d at 1410 (footnote omitted). Thus, if collection agents could be sued, they "would be placed in the position of having to collect taxes at their peril," placing them in situations, for example, where they " 'would be required to refund taxes to the taxpayer but could not recover them from the government.' " *Id.*, 134 F.3d at 1411 (quoting *DuPont Glore Forgan, Inc. v. AT & T Co.*, 428 F.Supp. 1297, 1306 (S.D.N.Y.1977)) (footnotes and additional citation omitted).

Second, allowing claims like those of the *Brennan* plaintiffs' would deny the IRS the opportunity to investigate and resolve tax claims without the time and expense of litigation. *Id.*, 134 F.3d at 1411 (citation omitted). Third, allowing suits of this type could undermine the strict limitations periods set forth in the statute for tax refund suits. *Id.*, 134 F.3d at 1411–12. In summary, the court found that "accepting Plaintiffs' argument would render § 7422 virtually a dead letter because it would apply to innumerable cases; it has no logical stopping point." *Id.* As a result, the court held that "where a plaintiff sues to recover a sum that was collected as a tax, the plaintiff has sued for a tax refund, even if the sum does not literally constitute an internal revenue tax." *Id.*

Starbucks argues that pursuant to *Brennan*, section 7422 precludes the plaintiffs from maintaining the present action, which, as noted previously, Starbucks characterizes as a tax refund suit. The plaintiffs continue to maintain that they are not seeking a refund of wrongfully withheld "sums" or "taxes," but instead are simply challenging Starbucks's method of estimating its employees' tips at 50 cents per hour, and then collecting taxes on the estimated amount in the absence of any law that "requires" Starbucks to do so. Like the plaintiffs' argument in *Brennan*, the plaintiffs' argument here "has 'superficial appeal but it nevertheless misses the mark." *Brennan*, 134 F.3d at 1409. The plaintiffs are attempting to hold Starbucks liable under state law for "wrongfully" collecting taxes on imputed tips—a claim that falls squarely within the definition of a "tax refund suit." *See* 26 U.S.C. § 7422(a).

### *Umland v. PLANCO Financial Services, Inc.*

Starbucks argues *Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59 (3d Cir.2008), "is on all fours" with the present case. Dkt. # 19, p. 18. In *Umland*, the plaintiff brought a putative class action against her employer for wrongfully deducting the employer's share of FICA taxes from employees' paychecks after the

employees were reclassified from independent contractors to employees. Based on the employer's allegedly wrongful deductions, Umland asserted claims for breach of contract and unjust enrichment. PLANCO moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. The district court granted the motion, and Umland appealed. *See id.,* 542 F.3d at 61–63. It is the appellate court's treatment of Umland's unjust enrichment claim that is relevant to the present inquiry.

Umland claimed PLANCO was unjustly enriched when it withheld an extra 7.65% of her salary, and then used that sum to pay PLANCO's employer portion of the required FICA tax. Umland called "the alleged withholding of an additional 7.65 percent an illegal assessment of the employer FICA tax on the wrong people." *Id.,* 542 F.3d at 68. The court observed, "But even under Umland's characterization, we think her unjust enrichment claim amounts to an allegation that the amount of PLANCO's employer FICA tax was 'wrongfully collected' from her." *Id.* As a result, the court held Umland's claim was preempted by section 7422, holding:

> As the Court in *Brennan* pointed out, "§ 7422 applies to *any* suit for *any* sum wrongfully collected in *any* manner." 134 F.3d at 1410 n. 7 (emphasis in original). As the Supreme Court has recently remarked with regard to § 7422: "Five 'any's' in one sentence [there were two more than the three noted above] and it begins to seem that Congress meant the statute to have expansive reach." *See U.S. v. Clintwood Elkhorn Mining Co.,* [553 U.S. 1], 128 S.Ct. 1511, 1516, 170 L.Ed.2d 392 (2008) (holding that claims for a refund of invalid export tax brought under a statute other than § 7422 were barred). *FN /*

> *FN /* Although our case contrasts with *Clintwood* because the taxpayers there sought a refund from the Government, ... PLANCO is still a "collector" of employment taxes, *see Kaucky [v. Southwest Airlines Co.],* 109 F.3d [349,] 351 [ (7th Cir.1997) ] (stating that "the firm corresponds to an employee of the [IRS]").

*Umland,* 542 F.3d at 68 & n. 9.

The court further noted the money at issue in Umland's claims was, in fact, a tax, and under the express terms of section 7422, Umland was required to seek a refund from the IRS, which then would seek to collect from PLANCO. *Id.,* 542 F.3d at 68–69. "Moreover, even if we did not hold that the language of § 7422 expressly preempted Umland's claim, the broad sweep of § 7422—especially as described by the Supreme Court, *see Clintwood,* 128 S.Ct. at 1516—suggests that Congress intended the IRS to occupy the field of tax refunds, preempting claims such as Umland's." *Id.*

In a footnote, the *Umland* court specifically distinguished another case upon which the plaintiffs here rely. In *Mikulski v. Centerior Energy Corp.,* 501 F.3d 555 (6th Cir.2007), shareholders sued a corporation for allegedly over-reporting taxable dividends, causing the shareholders to overpay income taxes. Among other things, the *Mikulski* court held, "The mere fact that the plaintiffs' damages are calculated in terms of overpaid income taxes does not necessitate the conclusion that the plaintiffs' claim must actually be one for a federal income tax refund.... Perhaps more to the point, ... the plaintiffs are not seeking a tax refund inasmuch as they are not accusing the IRS of any wrongdoing. Under the plaintiffs' theory, the IRS was an innocent third-party, who, like the plaintiffs themselves, merely relied on [the corporation's tax reporting]." *Id.,*

501 F.3d at 564–65. The *Umland* court distinguished *Mikulski* "because, unlike PLANCO, the employer 'did not collect or withhold any taxes' and 'was not acting as a collection agent for or on behalf of the IRS.'" *Umland*, 542 F.3d at 68 n. 10 (quoting *Mikulski*, 501 F.3d at 565). Similarly, Starbucks, like PLANCO, withheld taxes in its capacity "as a collection agent for or on behalf of the IRS." *See id.*

In the present case, the court finds the *Umland* reasoning most persuasive. The entire basis for the plaintiffs' claims against Starbucks is the company's estimation of employees' tip income, on the basis of which the company then calculates, withholds, and remits taxes. As such, even though the plaintiffs do not expressly pray for a refund of wrongfully-withheld taxes, this nevertheless is a tax refund suit. Starbucks's estimation of employees' tip income was done pursuant to the company's understanding (whether mistaken or not—a question not decided here) of the Tax Code and applicable regulations, and in withholding taxes on the estimated tip income and remitting those funds to the IRS, Starbucks was "acting as a collection agent for or on behalf of the IRS." *Id.* As a result, the plaintiffs' exclusive remedy is to seek a refund from the IRS, which, in turn, can then seek to recover from Starbucks. *See Brennan* and *Umland, supra.* Pursuant to 26 U.S.C. §§ 7422 and 3403, the plaintiffs are precluded from suing Starbucks for allegedly wrongfully withholding taxes on its employees' estimated tip income.

This analysis applies to all of the plaintiffs' claims that are based on Starbucks's "wrongful deduction of three categories of taxes from its employees' wages based on imputed and other tip amounts." Dkt. # 1, ¶ 4. All of those claims are preempted by federal law.

A similar analysis applies to the plaintiffs' claims based on allegations that Starbucks wrongfully withheld Oregon income taxes on tip income.[4] Like the federal Tax Code, Oregon law similarly provides, "No employee has any right of action against an employer in respect of any moneys deducted from wages and paid over in compliance or intended compliance with [the employer's tax collection and remittance obligations]." ORS § 316.197(2).[5]

4. In their complaint, the plaintiffs state tip income does not constitute "wages" under Oregon law, and therefore Starbucks violated the law by withholding taxes on tips. The plaintiffs are incorrect. *See, e.g., Nelson v. SAIF Corp.*, 302 Or. 463, 469, 731 P.2d 429, 432 (1987) (noting ORS § 656.005(26) expressly provides that for purposes of worker's compensation, "Wages ... includes the amount of tips required to be reported by the employer pursuant to [26 U.S.C.] section 6053 ... or the amount of actual tips reported, whichever amount is greater...."); 26 U.S.C. § 3121(q) (specifying that for purposes of FICA, "tips received by an employee in the course of his employment shall be considered remuneration for such employment"); 26 U.S.C. § 3401(f) (defining the term "wages," for purposes of federal tax withholding, to "include[ ] tips received by an employee in the course of his employment"); and ORS

§ 316.012 (providing that terms used in the Oregon tax code have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in [the Oregon tax code]").

5. Starbucks's discussion of, and reliance upon, OAR 150–316.197(2) is misplaced. *See* Dkt. # 19, pp. 20–22. That particular administrative rule provides that "[r]ecourse against an employer in regard to taxes on wages withheld and reported, *but not paid to the Department of Revenue,* is exclusively that of the state," and the employee's only rights to such sums "are those of a tax credit or refund[.]" OAR 150–316.197(2) (emphasis added). The plaintiffs have not asserted a claim that Starbucks failed to pay any withheld amounts over to either the IRS or the Oregon Department of Revenue.

### Dennis v. Hart

In a "Supplemental Notice of Additional Binding Authority," the plaintiffs argue the recent case of *Dennis v. Hart*, 724 F.3d 1249 (9th Cir.2013), is "binding authority" in support of their motion for remand. Dkt. # 43. In *Dennis*, the plaintiffs were shareholders of nominal defendant PICO Holdings, Inc. Despite reporting negative net income in 2010, PICO's board increased executive compensation. The court noted PICO's "[s]hareholders, it appears, were not happy with this." *Id.*, at 1251. The federal Dodd–Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78n–1 ("Dodd–Frank"), requires public companies to hold a shareholder vote (known as a "say-on-pay" vote) at least every three years to approve executive compensation. PICO held a vote under the Act in May 2011, and 61% of its shareholders voted against the 2010 compensation package.

When the board took no action in response to the say-on-pay vote, two shareholders filed shareholder derivative actions in California state court against PICO and its board members. In one action, the shareholder asserted several state-law-based claims, and also "requested a declaration 'that the adverse May 13, 2011 advisory shareholder vote on the PICO Board's executive compensation rebutted the business judgment surrounding the PICO Board's decisions to increase executive compensation in 2010.'" 724 F.3d at 1251. In another action, the shareholder asserted an unjust enrichment claim, and three claims for breach of fiduciary duty, one of which was based on "the Board's failure to respond to the say-on-pay vote." *Id.*

The defendants removed both cases to federal court and moved to dismiss, and the plaintiffs moved for remand. In the first case, the district court dismissed the prayer for declaratory relief for failure to state a claim, and remanded the remaining claims to state court, finding the plaintiff's claims "did not state a federal claim or involve a substantial issue of federal law," and declining to exercise supplemental jurisdiction over those claims. *Id.*, at 1252. In the second case, the district court dismissed the breach of fiduciary duty claim relating to the say-on-pay vote, held "the remaining claims did not state a federal claim or involve a substantial issue of federal law, declined to exercise supplemental jurisdiction and remanded the case to state court." *Id.* The plaintiffs and defendants all appealed those portions of the district court's rulings that were unfavorable to them. The cases were consolidated on appeal.

The Ninth Circuit first examined whether federal-question jurisdiction existed under the well-pleaded complaint rule, holding as follows:

> The defendants argue that the well-pleaded complaint rule confers federal jurisdiction because the say-on-pay vote precipitated plaintiffs' suits and the complaints are suffused with references to the vote. This is insufficient to support federal jurisdiction under the well-pleaded complaint rule. *See* [*ARCO Env'l Remed. LLC v. Dep't of Health & Env'l Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir.2000).] Federal-question jurisdiction does not attach here, because the plaintiffs' complaints allege state—not federal—causes of actions. 'As the master of the complaint, a plaintiff may defeat removal by choosing not to plead independent federal claims.' *Id.* at 1114.

*Dennis*, 724 F.3d at 1252. Fredrickson argues a similar result should be found here, where the plaintiffs allege only state causes of action. Dkt. # 43, p. 3. However, that argument fails to consider the "artful pleading" analysis discussed

above—an analysis not addressed by the *Dennis* court.

The *Dennis* court further found that because the plaintiffs were not attempting to enforce a liability or duty created by the Securities Exchange Act of 1934, but were only alleging violations of state laws, that Act was inapplicable and could not form the basis of federal-question jurisdiction.[6] *Id.*, at 1252–54. Fredrickson again argues a similar result applies in the present case, asserting the *Dennis* defendants' argument was "similar to Star-bucks's argument that 26 U.S.C. § 7422 provides exclusive federal jurisdiction over a 'suit or proceeding . . . for the recovery of . . . any sum alleged to have been excessive or in any manner wrongfully collected.'" Dkt. # 43, p. 3 (quoting Dkt. # 36, p. 20). This argument fails based on the court's determination that the present case is a tax refund suit within the definition of section 7422.

The *Dennis* court next addressed the defendants' argument that federal-question jurisdiction was warranted because the case implicated a "significant federal issue." *Dennis*, 724 F.3d at 1252–54 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 2366–67, 162 L.Ed.2d 257 (2005)). In particular, the defendants argued that in enacting Dodd–Frank, Congress had gone "to great lengths to ensure that say-on-pay votes were merely advisory and to bar any adverse consequences from a negative vote." *Id.* The defendants argued this evidence of congressional intent constituted "a significant federal issue conferring federal jurisdiction." *Id.* The Ninth Circuit disagreed, noting that although "the defendants might have a very strong federal defense," a federal defense

is "'inadequate to confer federal jurisdiction.'" *Id.* (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986)). The *Dennis* court held, "This is true even when the defense is that federal law preempts the state law claim." *Id.* (citation omitted). The court noted that "[a]side from their potential defense, the defendants [had] identified no significant federal issue that would confer jurisdiction." *Id.*, at 1254. Fredrickson argues that, similar to the defendants in *Dennis*, Starbucks has nothing but a "federal defense" in the present case, which cannot confer federal jurisdiction. Dkt. # 43, p. 4. Again, as demonstrated in the court's analysis of *Bright, Brennan,* and *Umland,* above, the present case does, in fact, implicate a "significant federal issue."

Lastly, the *Dennis* court considered the defendants' argument that federal jurisdiction existed under the doctrine of "complete preemption." *Dennis*, 724 F.3d at 1254–55. The court explained the doctrine as follows:

Complete preemption is "really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp. [v. Modesto & Empire Traction Co.]*, 581 F.3d [941] at 945 [ (9th Cir. 2009) ] (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund,* 538 F.3d 594, 596 (7th Cir.2008)) (alterations omitted). Complete preemption is a limited doctrine that applies only where a federal statutory scheme is so comprehensive that it entirely supplants state

6. By analogy, the plaintiffs in the present case must be arguing they are not challenging Starbucks's right to comply with the IRS reg-

ulations on imputation of estimated tips to employees.

law causes of action. Examples include Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), Section 301 of the Labor Management Relations Act (LMRA) and the usury provisions of the National Bank Act. [Citations omitted.]

*Id.* However, the court noted the *Dennis* parties "agree that there is no federal cause of action for plaintiffs' claims, which places this case outside the realm of complete preemption." *Id.* In addition, the court held that unlike ERISA, the LMRA, and the National Bank Act, Dodd–Frank "created neither a federal cause of action nor a complex federal regulatory scheme." *Id.*

On this issue, *Dennis* also is distinguishable from the present case. Here, as discussed above, there *is* a federal cause of action for the plaintiffs' claims which is limited to claims against the government. In addition, as discussed in the next section of this opinion, Congress has created a "complex federal regulatory scheme" that governs the plaintiffs' claims.

Thus, the court does not find that *Dennis* changes the result in the present case. The court further finds the additional authorities proffered by Fredrickson to be unpersuasive. *See* Dkt. # 43 (discussing *Van Vactor v. Wells Fargo Bank, N.A.,* 2013 WL 3053014 (C.D.Cal. June 14, 2013) (unpublished); *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.,* 726 F.3d 8 (1st Cir.2013)); *cf.* Dkt. # 44, Starbucks's response to Fredrickson's supplemental authorities (arguing "there are *three* bases for federal jurisdiction in this case—not just federal question and federal tax jurisdiction, but also diversity jurisdiction under [CAFA]").

### Preemption

The general law of federal preemption also supports the conclusion that the plaintiffs' state-law claims based on Starbucks's withholding of taxes on estimated tips are preempted by federal law.

The Supreme Court recently explained the history and basis of federal preemption in *Arizona v. United States,* —— U.S. ——, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012), as follows:

Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect.... From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes. The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." [U.S. Const.] Art. VI, cl. 2. Under this principle, Congress has the power to preempt state law.... There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision....

State law must also give way to federal law in at least two other circumstances. First, the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance.... The intent to displace state law altogether can be inferred from a framework of regulation "so pervasive ... that Congress left no room for the States to supplement it" or where there is a "federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." ...

Second, state laws are preempted when they conflict with federal law.... This includes cases where "compliance with both federal and state regulations is a physical impossibility," ... and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."
...

*Arizona,* 132 S.Ct. at 2500–01 (citations omitted); *see Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 373, 120 S.Ct. 2288, 2294, 147 L.Ed.2d 352 (2000) ("What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.") (quoted with approval by the *Arizona* Court). The *Crosby* Court observed that "the categories of preemption are not 'rigidly distinct,'" noting "field preemption may be understood as a species of conflict preemption," falling into "any of the categories of express, implied, or conflict preemption." *Crosby,* 530 U.S. at 373 n. 6, 120 S.Ct. 2288 (citations omitted); *see also Ting v. AT & T,* 319 F.3d 1126, 1135 (9th Cir.2003) (defining "express preemption"; "field preemption (sometimes referred to as complete preemption)"; and "conflict preemption").

If conflict preemption is found, "the Supremacy Clause invalidates the state or local law." *Central Alabama Fair Housing Center v. Magee,* 835 F.Supp.2d 1165, 1175 (M.D.Ala.2011) (citing, *inter alia, Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*

505 U.S. 88, 108, 112 S.Ct. 2374, 2388, 120 L.Ed.2d 73 (1992)). However, a presumption exists against preemption. "If confronted with two plausible interpretations of a statute, the court has a duty to accept the reading that disfavors pre-emption." *Genesee Cty. Emp. Retirement Sys. v. Thornburg Mortg.,* 825 F.Supp.2d 1082, 1145 (D.N.M.2011) (internal quotation marks omitted; citing *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449, 125 S.Ct. 1788, 1801, 161 L.Ed.2d 687 (2005)).

The *Umland* court found exactly the type of preemption described by the *Arizona* Court. The *Umland* court held "the broad sweep of § 7422 ... suggests that Congress intended the IRS to occupy the field of tax refunds, preempting claims such as Umland's." *Umland,* 542 F.3d at 69. A similar analysis applies to the plaintiffs' claims in the present case.

In addition, the plaintiffs' claim that Starbucks's actions violate ORS § 652.610(3) also fails, because to the extent the Oregon statute would prohibit conduct specifically authorized by federal law, the statute is preempted. Federal laws and regulations specifically authorize Starbucks to estimate the amount of tip income received by its employees, and to withhold taxes based on that estimate. *See* 26 U.S.C. § 3102(c)(3); 26 C.F.R. § 31.3102–3(c).[7] On its face, ORS § 652.610(3) prohibits an employer from withholding "any portion of an employee's wages unless ... [t]he employer is *required* to do so by law[.]" ORS

---

**7.** Fredrickson argues "published opinions from both the IRS and the U.S. Supreme Court specifically and explicitly tell employers **not** to withhold taxes from unreported tips." Dkt. # 45, p. 3 (citing *United States v. Fior D'Italia, Inc.,* 536 U.S. 238, 249, 122 S.Ct. 2117, 2125, 153 L.Ed.2d 280 (2002); IRS Chief Counsel Advice 200929004, 7/17/09, available online). Even assuming *arguendo* that Fredrickson's characterization of *Fior*

*D'Italia* and the IRS Chief Counsel Memorandum is correct (which the court neither affirms nor disputes, at this juncture), neither opinion is relevant to the present inquiry. Here, the question is not whether Starbucks incorrectly withheld taxes on "unreported tips"; the question is whether Starbucks properly acted under the authority granted in 26 U.S.C. § 3102(c)(3), with regard to *estimated* tips.

§ 652.610(3)(a) (emphasis added). Because neither the Internal Revenue Code nor its implementing regulations "require" an employer to withhold tax on estimated tips, an employer, like Starbucks, who does so pursuant to the permissive authority granted by federal law is in violation of the Oregon statute. This is precisely the type of conflict that is addressed by federal preemption. When a state law specifically prohibits an activity that is authorized by federal law, the state law must give way. *See, e.g., Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 32–34, 116 S.Ct. 1103, 1108–09, 134 L.Ed.2d 237 (1996) (holding a federal law permitting national banks to sell insurance in towns with less than 5,000 residents preempted a state statute prohibiting banks from selling most types of insurance); *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 12, 127 S.Ct. 1559, 1567, 167 L.Ed.2d 389 (2007) ("[W]hen state prescriptions significantly impair the exercise of authority, enumerated or incidental under [a federal law], the State's regulations must give way.") (citing *Barnett, supra* ); *Horn v. Thoratec Corp.,* 376 F.3d 163 (3d Cir.2004) (state common-law claims and duties that either added to, or were different from, federal requirements for approval of medical device were preempted by federal law).

### *"Potential Additional Violation[s]"*

In the factual allegations of their complaint, the plaintiffs also allege Starbucks over-withheld amounts for the Oregon Workers' Benefit Fund from the plaintiff Hannah Fredrickson's wages, and failed to pay Fredrickson for short breaks or "rest periods" as required by law. *See* Dkt. # 1–1, ¶¶ 29–33. The plaintiffs suggest, on "information and belief," that Starbucks *may have made* similar wrongful deduc-

tions from the wages of other employees. *Id.* The plaintiffs do not include a separate claim for relief for these alleged amounts. *See id.,* ¶¶ 40–54.

In a footnote in its memorandum, Starbucks asserts these "naked" allegations are insufficient under *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Dkt. # 19, p. 22, n. 4. The plaintiffs have not responded to Starbucks's argument, nor did they discuss these "potential additional violation[s]" in their briefs. In Starbucks's reply, it argues that because the plaintiffs "neither disagreed [with] nor responded to the point[,] . . . those two 'potential' claims are abandoned." Dkt. # 29, p. 18 (citations omitted). Indeed, the court may deem a claim waived if a party fails to address the claim in opposition to a motion. *See Foster v. City of Fresno,* 392 F.Supp.2d 1140, 1147 (E.D.Cal.2005).

The court stops short of finding the plaintiffs have waived any claims based on these additional factual allegations. Because no actual claim has been pleaded based on those facts, there is no claim to dismiss, rendering moot Starbucks's motion to dismiss those non-existent "claims."

### *Conclusion*

For all the reasons discussed above, the court concludes that all of the plaintiffs' claims are preempted by federal law. As a result, Starbucks properly removed the case to this court, and the plaintiffs' motion for remand should be denied.

The court further concludes the plaintiffs' claims are precluded by both federal and state law. Therefore, Starbucks's motion to dismiss should be granted.[8]

---

8. Because the court finds the case should be dismissed, the court does not reach Starbucks's argument that the plaintiffs lack standing to bring a class action because they are no longer employed by Starbucks.

*Scheduling Order*

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by **September 16, 2013.** If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then any response is due by **October 3, 2013.** By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 28th day of August, 2013.